No. 13,976.

MRS. MANNETTE RAY AND HUSBAND ET ALS. VS. L. D. MCLAIN ET ALS.

SYLLABUS.

1. All the heirs of a testate succession being *sui juris* and being, at once, heirs at law and testamentary heirs, may ignore the will and divide the estate as they please, and if, with their consent and acquiescence, such estate is administered by an administrator, instead of an executor, they cannot be heard, to the prejudice of the rights of third persons, acquired as the result of such administration, to object that the proceedings and orders, in which they participated and of which they availed themselves, were irregular and illegal.

2. Nor can such heirs, at whose instance, or with whose consent, an administrator has been appointed, for two successions, the one testate and the other intestate, and who, by written instruments, have ratified, confirmed and approved the acts of such administrator, including sales, made by order of court, at his instance, and have, by such written instruments, authorized him to proceed, and, with the money realized, pay and compromise certain claims pending against themselves, be heard, after the sales have been made, and the money received and disposed of as thus authorized, to attack the titles of the purchasers, on the grounds that the successions had been closed and that the appointment of the administrator was illegal.

A PPEAL from the Sixth Judicial District, Parish of Ouachita.— Hall, J.

Andrew Augustus Gunby and E. Tyler Lamkin, for Plaintiffs, Appellants.

*William Francis Milsaps,* for Uriah and Mrs. Alice R. Milsaps, Tutrix, Defendants, Appellees.

*Hudson, Potts & Benstein,* for McLain, Defendant, Appellee.

The opinion of the court was delivered by

MONROE, J.    The plaintiffs, Mrs. Mannette Ray, wife of Robert Ray, Jr., Mrs. Lillie McCormick, wife of J. H. McCormick, Mrs. Myra C. Ray, wife of John B. Ray, and the minor, Leeta Rills, represented by E. H. Rills, her father and tutor, claiming as heirs, and as the transferees of other heirs, of their deceased grandmother, Thankful R. Bry, bring this, petitory, action, to recover an interest in land constituting the site of the town now known as West Monroe, in the Parish of Ouachita.    The defendants are L. D. McLain, Uriah Milsaps and Alice R. Milsaps, tutrix of the minor Fred Flournoy Milsaps, only son and heir of Thomas F. Milsaps, deceased, for whom there was judgment in the District Court, from which the plaintiffs have appealed.    The facts disclosed by the record are as follows:

Mrs. Thankful R. Bry, wife, separate in property, of Henry M. Bry, and grandmother of the plaintiffs, died in 1871, leaving a will, whereby she bequeathed the usufruct of her estate, including the land here claimed, to her husband, and the naked title to her children and grandchildren then living.    This will was admitted to probate, and the surviving husband, having qualified as executor, entered into possession as usufructuary, and so remained until he died, intestate, in August, 1880.    Upon the death of Henry M. Bry, C. D. Bry, his son, was appointed administrator of his succession, as also of the succession of Thankful R. Bry, his (C. D. Bry's) mother, upon his giving a bond, which was signed by most of his co-heirs, including all the parties to this suit (the mother of the minor, Rills, then Mrs. Hardy, signing for herself, and E. H. Rills, who appears in the petition herein filed, as the tutor of said minor, signing said bond in his individual capacity), and he administered said succession until his death, in June, 1881.

In the meanwhile, upon October 11th, 1880, there had been a partial partition between the heirs, including all those now before this court, by means of a notarial act, which, after giving the names of the parties thereto, contains the following, among other recitals, to-wit: "And the parties aforesaid to this act have entered into and do hereby enter

into the following contract and agreement of partial partition of the succession of their late ancestors, Henry M. and Thankful R. Bry, deceased, opened in the Parish of Ouachita, said State. Whereas, in the present state of said succession it is uncertain what the proportion of each of said parties therein will be, now, in order that each of said parties may enter, at once, upon the enjoyment of part of said inheritance, it is mutually agreed and covenanted as follows" (then follows a distribution of real estate, not, however, including that herein claimed, to the different heirs named and participating, after which the act proceeds): "In order to fully secure the creditors of said succession, the administrator thereof and his bondsmen, against possible loss on account of this partial partition, the parties to this act, each of them, do hereby mortgage and hypothecate said property by him received and to him by this act conveyed for the full amount of the price at which each of them received said property, in favor of the successions of Henry M. and Thankful R. Bry, said mortgage to remain of full force and effect against said property until the final settlement of said succession, and for any balance that may be shown to be due by said final settlement against any one or all of said parties, until said balance shall have been fully paid." And the various amounts for which the mortgages are granted by the parties upon the property distributed to them, respectively, is then specified.

Upon the death of C. D. Bry, J. K. Stewart, the husband of one of the daughters of the decedents, was appointed to succeed him as administrator, and he gave bond, which bond was signed by T. M. Rills, mother of the minor Rills, aided by E. H. Rills, her husband; by Lillie McCormick, aided by J. H. McCormick, her husband; and by Julia Manette Ray, aided by Robert Ray, Jr., her husband, as sureties. Shortly after this appointment, an account of C. D. Bry's gestion, showing an incomplete administration, and purporting to turn over the assets of the two estates to his successor, was filed by his widow and executrix, and, after due advertisement, was homologated. In March, 1883, Stewart filed his final account, which was likewise homologated by judgment of date April 19th, 1883, whereby, also, the administrator was discharged and his bond canceled. Thereafter, upon March 10th, 1885, F. P. Stubbs, at the solicitation of all the heirs who were in or about Monroe at that time, including, as we think likely, all the plaintiffs in this case, filed a petition, claiming to be a creditor of the two successions, and particularly of the succession of H. M. Bry,

alleging that there remained considerable property which had not been administered or disposed of, and praying to be appointed administrator; and, after due advertisement of the application, he was so appointed. He thereupon caused an inventory to be made, which included, as not having been administered, the property here claimed, which inventory was participated in by E. H. Rills, and J. H. McCormick, acting in the capacity of appraisers. This was followed by applications to sell the property inventoried to pay debts, and by orders to that effect agreeably to which, after due advertisement, said property was sold by the sheriff in different lots to different purchasers on May 2nd and May 30th, respectively, of 1885; the defendants, that is to say, Milsaps brothers, composed of Uriah and Thomas F. Milsaps, and L. D. McLain, becoming the purchasers of the property in controversy, deeds to portions of which were executed by the administrator of dates June 1st and 13th, 1885, respectively. Upon May 28th, 1885, whilst these proceedings were in progress there was executed an instrument in writing, which, so far as it need be quoted, reads as follows, to-wit:

"Parish of Ouachita. }
"State of Louisiana, }

"This memorandum shows that we, the heirs and representatives of the late Henry M. Bry and his wife, Thankful R. Bry, deceased, to-wit:

"1st. Mrs. Lillie McCormick, in her own right and as owner of the interests of Henry B. Williams and Mrs. Clara Bry Smith, authorized by her husband, Joseph H. McCormick; Frank Cauthorn and Mrs. Myra Cauthorn Ray, represented by their agent and attorney in fact, Joseph H. McCormick;

"3rd. Mrs. Thankful R. Rills, wife of E. H. Rills, represented by her husband;

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

"5th. Mrs. Louise Beeson, represented by her attorney and agent, H. H. Russell, and,

"6th. Mrs. Nettie Ray, wife of Robert Ray, Jr., represented by her attorney, Robert Ray, Sr., Esq. (these two last, however, acting subject to the approval of their respective principals), declare that they are the sole heirs and representatives of the estate of H. M. and T. R. Bry, now authorized to participate therein; that the heirs have heretofore had partial partition among themselves, and that C. D. Bry

and John K. Stewart, as administrators, have, respectively, and partially administered the estates and paid a portion of their debts. That considerable property, real estate as well as some personal rights and property belonging to the estates, were not sold by either Bry or Stewart, administrators, nor have the heirs taken possession of or partitioned the same among themselves, but that same have been left in the succession to be administered and sold for the payment of the unpaid liabilities of the succession. That the debts of the estates remaining unpaid but liquidated now exceed six thousand dollars, including the judgment in the case of Mrs. O. L. Bracey et als. vs. Mrs. M. M. Calderwood, with the judgment and obligations of warranty against the estates of H. M. Bry, T. R. Bry and their heirs. That F. P. Stubbs is also a creditor of the estate, and that, for the purpose of paying the remaining debts of the succession, the heirs requested and induced the said Stubbs to open the succession and administer upon the unsold property, whereupon he applied for and was appointed such administrator, causing inventories to be made of the property unsold and undivided; and, further, having obtained orders of sale to pay the debts, the property (real) on said inventories has been offered, and a portion, on the first Saturday in May, having been sold, for cash, the balance not selling, it is to be offered on twelve months' credit on Saturday, the 30th inst. Now, some parties having undertaken to question the right to reopen the succession, or to sell the property as that of the succession, claiming that it could only be administered by the heirs, now, one of the purposes hereof is to put in writing the facts that we severally ratify and approve the acts of the said administrator, F. P. Stubbs, as legal and proper and in accord with our wishes and interests, and that we confirm and approve all sales made heretofore by said administrator and all that may be made at the prospective offering on the 30th instant. And, further, being induced to believe that the principal debt against the estate, to-wit: the Bracey judgment and claim in warranty, amounting to five thousand dollars, without interest, can be compromised and settled for about two thousand dollars, we, not having the means, but being satisfied that such a compromise would be very advantageous to the interests of the estates and the heirs, we, severally, request the administrator to use the proceeds of the sales of the property of the estates, whether cash, notes or bonds, for the accomplishment of this purpose, and agree and bind ourselves, as heirs

of the estates, to ratify all of his acts in the premises, and join him in an application to approve the same on his filing an account of his administration."

One instrument of this kind was signed by Lillie McCormick and by J. H. McCormick, her husband, to authorize her, and also as the agent of Frank Cauthorn and Myra C. Ray; by Robert Ray, attorney in fact for Nettie Ray, wife of Robert Ray, Jr.; by Hannah B. Stewart, and J. K. Stewart, her husband, to authorize her; by T. M. Rills and E. H. Rills, her husband, to authorize her; and by Mrs. Louise V. Beeson, through her attorney in fact, H. H. Russell; and other such instruments in identical language were signed separately by Frank Cauthorn and by Myra C. Ray and her husband John B. Ray, to authorize her, these parties being all the heirs of the estates and of full age.

In the month of June, following the execution of the foregoing, Mrs. Manette Ray, one of the plaintiffs and appellants now before this court, who had moved to New Orleans some time in 1883, with the authorization of her husband, executed another instrument, prepared by Judge Robert Ray, Sr., her husband's uncle, and presented to her for that purpose by John Ray, her husband's father. which reads as follows:

"State of Louisiana, }
"Parish of Orleans. }

"I, Julia Manette Hazleton, wife of Robert Ray, Jr., resident of the said parish and State, said Robert Ray, Jr., authorizing his said wife herein to sign, do hereby nominate, constitute and appoint Robert Ray, of Monroe, Ouachita parish, La., our attorney in fact and in law, and hereby authorize and empower him to enter into any transaction or compromise touching or pertaining to any lawsuit or lawsuits that we may be interested in, in any way, in the Parish of Ouachita, and I further ratify his act in signing for me, as my attorney in fact, a certain instrument in writing whereby the heirs of Bry and Mrs. Bry ratify all the acts of F. P. Stubbs, as administrator of the estates of Bry and Mrs. Bry, and authorized the said Stubbs to compromise the Bracey Calderwood matter between said heirs, and to do all other things for me that may become necessary in the premises touching any and all my business in said parish and State. In testimony whereof

said parties have signed their names in the presence of the under-
signed witnesses on this ———— day of June, 1885.

                    (Signed)   JULIA MANETTE RAY,
Witnesses:                     ROBT. RAY, JR.
          JOHN RAY.
          JULES LAPEINE."


The two witnesses are dead, but their signatures are proven, and,
whilst the plaintiff, Mrs. Ray, testifies that Jules Lapeine was not
present at the time, she admits that she and her husband signed the
instrument in the presence of John Ray, her husband's father, the
defense relied on being that she did not read the said instrument and
was under some misapprehension as to its contents. Thereafter, for
fifteen years, the defendants appear to have heard nothing to the
prejudice of the title which they had acquired, and the plaintiffs do
not appear to have molested them, or to have concerned themselves
about the property, either by paying taxes or otherwise, until they
brought this suit. The Bracey-Calderwood matter, referred to, arose
out of a suit brought by Mrs. Bracey against Mrs. Calderwood in
which the latter called the heirs of H. M. and T. R. Bry in warranty.

Some of the heirs, and among them Mrs. Rills and Mrs. McCor-
mick, were cited personally and appeared and answered. But Mrs.
Mira C. Ray was not made a party to the suit, and Mrs. Manette Ray
had, about that time, moved to New Orleans, and the citation ad-
dressed to her was served at her last place of residence in Monroe, and
she denies having received it, and made no appearance. She was,
however, included in the judgment rendered in April, 1884, against
those who appeared, and was condemned for one-half of one-seventh
of the whole amount awarded, which was five thousand dollars, with
interest, and in October, 1884, there was execution against her, under
which certain property in Monroe, which she had received in the par-
tial partition of the estates of her grandparents, was seized. This
appellant has introduced two letters from Judge Ray, one to her hus-
band and the other to her husband's father, in which the writer says,
inter alia, under date February 3rd, 1884:

"I have looked into the Bry matter, and find that they are all as
anxious for a partition of the balance of the property as you are, but
something has always prevented it, but I think it will take place
soon. I have also examined the Bracey matter, and am afraid the

estate of H. Bry will have to pay; also their *pro rata* of the Jas. S. Ray bond. Neither affects Mrs. Bry's estate. It would be unadvisable and out of the question for Nett to take any legal steps, as set forth in Pa's letter to me last Nov., which I only received the other day."

Under date November 16, 1884, to the plaintiff's father-in-law, the writer says:

"I want to write you now something about Nett's matters here. You know that a judgment was obtained some time ago against the Bry heirs for $5,000, and Nett's portion of that was one-half of one-seventh. The other day, Mrs. Calderwood, who obtained the judgment against them, as warrantors, issued execution against each one, individually, and under the *fi. fa.* against her" (her) "home and lot was seized, together with the rents. I immediately obtained an injunction stopping the advertisement and sale, on two grounds; 1st, that no notice of seizure had been given her; 2nd, that Mrs. Calderwood, who was a warrantor herself, had paid Mrs. Bracey nothing. * * *

"I have done all this on what you wrote me, to attend to anything that affects her interest. The injunction may be tried in January. I wish you would tell her what I have done, and send me a power of attorney, dated about the 1st of August, so as to cover my authority to act for her in this injunction."

## OPINION.

The grounds upon which the plaintiffs appear to rely for the recovery of the property claimed by them are: That the succession of their grandmother, to which it belonged, was a testate succession and could not legally have been placed under the control of administrators, and, hence, that the administrations of C. D. Bry and John K. Stewart were illegal; that, if the validity of those administrations be recognized, nevertheless they were terminated before any sale of the property in question was made, and the title to said property had vested in the heirs, and that the subsequent appointment of F. P. Stubbs, as the administrator of successions which had already been closed, was wholly unauthorized and without legal effect; and, finally, that the succession of their grandmother owed no debts, and its property could not legally have been sold to pay the debts of her husband's succession.

There are several defenses set up, and among them the plea of estoppel, which we find conclusive of the case,

Upon the death of Henry M. Bry, his heirs and those of his pre-deceased wife were all of age, and they thought fit to deal with the property which they had inherited by means of an administrator ap-pointed by the court for both successions. That the plaintiffs in this suit were agreed upon this, and participated in the proceedings, is shown by the fact that they, personally (with the exception of the minor, Rills, who was represented by her mother, through whom she inherited, and by her father, who appears for her in this suit), signed the bonds of both C. D. Bry, their uncle, and John K. Stewart, their uncle by marriage, as the successive administrators, and by the fur-ther fact that they recognized such administration in the act of partial partition entered into by them, and specifically bound themselves, and the property which they thereby received, with reference to and for the benefit of such administration. As the actors were at once the sole beneficiaries of the will of their grandmother, and her heirs at law, and might have ignored such will entirely, and have distributed her estate to suit themselves, we can conceive of no reason why they should not have proceeded as they did, more particularly as they obtained the sanction of the court (having both general and probate jurisdiction) in which both successions had been opened; nor can we conceive upon what principle of law or logic they now undertake to impeach the validity of proceedings conducted and of orders and judgments pro-voked by themselves.

Equally is this true of the subsequent administration. Let it be assumed, for the purpose of the argument, that a succession is closed when an administrator obtains his discharge, though he has not paid all the debts or administered all of the property, or formally turned over the succession to the heirs, there is nothing in our law to prevent persons who own property in common, which is burdened with obliga-tions, or, whether burdened with obligations or not, from appealing to a court of competent jurisdiction to aid them in the settlement of their rights with respect thereto, and from obtaining recognition of a common representative, selected and authorized by them, for that purpose. There is nothing immoral in such a course, and it has been sanctioned by our law and jurisprudence from time immemorial. Whether the representative so selected and recognized is called an "administrator" or "receiver," or is designated by some other title, is wholly immaterial. The only question to be inquired into in such a case, and in the absence of objection or complaint from some third

person, is whether such representative has kept within the limits of his authority and has faithfully discharged the functions for which he was employed. In the case at bar, the person who acted for the plaintiffs and their co-heirs, or co-owners, has testified that he did so at the solicitation and with the approbation of the heirs present, and no witness has testified to the contrary. There is not even a suggestion that the heirs of H. M. Bry were not liable for their proportion, amounting to over $700, of a certain judgment which had been obtained by the United States government in a suit defended in part by the father-in-law of Mrs. Manette Ray, against H. M. Bry and other sureties of Jas. S. Ray, receiver of public money, or that it had been paid at the time of the appointment of the administrator. It is not and cannot be denied that Mrs. Calderwood obtained judgment contradictorily with all the heirs whom she could reach, holding that they were liable, for an aggregate sum of $5,000, upon the warranty of their ancestor, and that she issued executions thereon and seized property acquired by some of them in the partition of their grandfather's estate. And it was at this conjuncture that the suggestion was made, and acted on, that other property belonging to the debtor should be utilized by means of the proceedings which are now attacked, for the payment of said claims. It is not suggested that the property in question would have brought a better price if it had been sold in some other way, or that the proceeds of the sale were not faithfully accounted for. As a matter of fact, the debt arising from the judgment which had been obtained by the government was paid as it had to be; the Calderwood claim, amounting to $5,000 and interest, was compromised for $2,000, and the administrator, who had acted in the matter at the request and in the interest of the debtors, filed his account, showing what disposition had been made of the balance of the proceeds, and, no opposition being made thereto, said account was approved and homologated by judgment of court. But, in the meantime, and pending the sales of property, which were being made at the instance of the administrator, but by the sheriff, acting under orders of court, and after due advertisement, the question which is being now raised, *i. e.*, as to whether, under the circumstances, the appointment of the administrator was competent, suggested itself, or was suggested, to the parties in interest, and they undertook to set it at rest by executing a written instrument in which they declared that they knew and approved and authorized all that had been done, and that was yet to be done, in

order to obtain the necessary means and therewith settle and com-
promise the claims which have been mentioned. And, after this in-
strument had been executed, certain of the property was adjudicated
to E. H. Rills, who appears here as tutor of the minor, Leeta Rills,
and he gave in liquidation of the price a twelve months' bond, signed
by Mrs. McCormick, another of the plaintiffs, as surety, and it appears
from the account of the administrator that said bond was subsequently
paid, with accrued interest.

It is claimed, on behalf of Mrs. Manette Ray, that she left Monroe
in April, 1883; that she knew nothing of the appointment of Stubbs
as administrator, and that she was not cited in and was not a party
to the Bracey-Calderwood suit. The evidence which she, herself, has
thought proper to introduce shows that, although she removed to New
Orleans, as she states, she was, nevertheless, represented in Monroe
by counsel, whose ability and loyalty to her she does not call in ques-
tion. It also shows that she was advised by her counsel that she was
probably liable for and would have to pay her proportion of the claims
heretofore mentioned, and that, whether properly cited or not, she was
condemned in the Calderwood judgment and her property in Monroe
seized thereunder; and the evidence further shows that, in the injunc-
tion sued out in her behalf, no question of citation was raised. It
further appears that, after being thus informed and advised, she, with
the authorization of her husband, and in the presence of her father-in-
law and another witness, executed a written instrument, prepared by
one or the other of them, whereby she authorized her said counsel,
being the uncle of her husband, to compromise any lawsuit in which
she might be interested in the Parish of Ouachita, and to do any other
things that might become necessary touching any and all of her busi-
ness in said parish, and specifically ratified his action in signing for her
the instrument whereby the heirs of H. M. and T. R. Bry ratified and
confirmed the acts of F. P. Stubbs, as administrator, and authorized
said Stubbs to compromise the Bracey-Calderwood matter. She now
asserts that she is not bound by this instrument, because she did not
read it, and signed it in ignorance of its purport. We have only to
say that the law does not compel people to read or to inform themselves
of the contents of instruments which they may choose to sign, but that,
save in certain exceptional cases, it holds them to the consequences,
in the same manner and to the same extent as though they had exer-
cised those rights, and that the case presented is not within any of

the exceptions. The defendants, whom this plaintiff is now seeking to hold responsible for her alleged ignorance, took no part in the execution of the instrument in question, and it is not pretended that any fraud or deception was practiced on her by her own counsel and advisers, to whom and at whose suggestion it was given.

In Allen, West & Bush vs. Whetstone," 35th Ann. 846, this court said: "There is not the slightest foundation for the defense, of error and fraud, set up by Mrs. Whetstone. It is not pretended that plaintiffs practiced any fraud or did anything to lead her into error. The deed was prepared by her husband and presented to her for signature by him. If she failed to read it, it was her own fault, and plaintiffs cannot be affected by any error resulting from her gross negligence." And in "Kerr et als. vs. Evershed," 41st Ann. 18, the plaintiff, contending that he had signed an act of mortgage, through error, it was said: "If he read the act, there was no excuse for error; if he did not read it, such gross negligence would leave him still less excuse." And to the same effect are the decisions in Watson vs. Bank, 22 Ann. 14; Keough vs. Foreman, 33rd Ann. 1339; Prescott vs. Cooper, 37 Ann. 553.

It will be observed that deeds to the property here claimed, or part of it, were executed by Stubbs, as administrator, upon June 1st, and June 13th, 1883, pursuant to the adjudication which had been made by the sheriff upon May 30th, preceding, and that the act of confirmation, ratification and authorization was executed in the meanwhile, to-wit: upon May 28th, 1883. And it is evident that the purpose and effect of this act was to bring about the consummation of the transaction and to secure from the purchasers the price of the property. If, at that time, instead of confirming what Stubbs had done and authorizing him to proceed, the plaintiffs had declared that he had acted illegally, and had declined to authorize him to complete the sales which had been made, or, if they had held aloof, it may be that the defendants would not have parted with their money; or, if at any time before the homologation of Stubbs' account, in January, 1888, the plaintiffs, instead of expressing in writing and for the avowed purpose of quieting the title which he had made, their approval of what had been done, intimated their disapproval, defendants might still have stopped the money in his hands and have recovered it. But, by reason of the declarations of the plaintiffs and their conduct at the time, and of their conduct during fifteen years thereafter, the defendants were induced

to pay for the property adjudicated to them, and to hold and deal with it as their own. But, suppose that the confirmation and ratification had not taken place until after the property had been sold and the proceeds distributed, it, nevertheless, remains that the plaintiffs have declared, in writing, that they knew of the sales and of the purpose thereof, and that they approved of the same and of the appropriation of the proceeds as having been used for the extinguishment of claims against them which they considered it necessary or expedient to pay or compromise.

Under these circumstances, they are estopped to question the titles of the defendants, and the other grounds of defense need not be considered. Judgment affirmed.

Rehearing refused.