LOUIS BAGNERIS

 VS No. 7471.

JOHN ODDO,
 APPELLANT.

April 17th, 1919.

CHARLES F. CLAIBORNE, JUDGE.

This is a suit to annul a judgment confessed by the defendant in favor of the plaintiff herein.

The original petition of Louis Bagneris alleged that John Oddo was indebted unto him in the sum of $830.90 for meat sold and delivered to him as appeared by the confession of judgment annexed.

The confession is written in ink on a half sheet of legal cap and is in the following words:

"St Bernard Parish, La.,

May 30th, 1917.

I Hereby certify that I am indebted unto Louis Bagneris in the full sum of Eight hundred and thirty 90-100 dollars, and hereby confess judgment to said amount, and I further waive all legal delays and citations and ask that judgment be entered against me at once.

Respectfully

his

John x Oddo

mark.

Witnesses to his mark:

M. Gonzales, Jr.

Louis Bagneris.

Signatures acknowledged before me Notary this 30th. day of May, 1917.

Signed: L. Fred Andry

Notary Public".

The petition was filed June 6th, 1917 and judgment was rendered against John Oddo and signed on the same day, - for the amount confessed.

279

On July 3d following, the defendant, John Oddo, enjoined the execution of the judgment, and prayed that it be annulled. He alleged that he was not indebted to the plaintiff Bagneris in the amount of $830.90; that he never purchased any meat from Bagneris; that "the truth was that about three years ago he signed a guarantee in favor of the said Bagneris whereby he was to guarantee to the extent of $400 payment for the purchases of meat made by his son Anthony Oddo; that on or about the last day of May, 1917, the said Bagneris informed petitioner that the original obligation had expired, and that he wanted it renewed, and when petitioner affixed his mark to a document on the last day of May 1917 petitioner was informed and led to believe that he was merely signing a renewal of the original obligation which he had signed three years before, that is to say, petitioner's guarantee that his son's, Anthony Oddo's, indebtedness to the said Bagneris, up to $400 would be paid; that he would not have affixed his mark to any document, nor to the so-called confession of judgment had he known its true meaning and purport, or the contents thereof; that he does not know how to read or write and relied solely upon the representations made by the said Bagneris that he was signing the renewal of the original obligation or guarantee up to the sum of $400, and that he was binding himself as surety for his said son and would be responsible for bills or purchases made by said Anthony Oddo, his son, to the extent of $400 and no more, should his son fail to pay his indebtedness; that the so-called confession of judgment was fraudulently obtained".

Bagneris admitted the confession of judgment but denied all the other allegations of the petition.

There was judgment in favor of Louis Bagneris and against John Oddo dismissing the petition for injunction and setting aside the injunction.

A motion for a new trial was denied and John Oddo has appealed.

The guarantee mentioned in Oddo's petition is written in indelible pencil upon a bill-head of L. Bagneris, ornamented with a large bull's head on the left hand top corner. It reads as follows:

"St. Bernard Parish, La.,

July 8th, 1914.

Be it known by all these present that I bind my-
self for the purchase of all meat or cattle purchased
by my son Anthony Oddo on my name from Mr. Louis Bagneris
up to the amount of $850.00 and it is further understood ·
that said cattle or meat will be charged to me and in my
name".

Respectfully
his
John x Oddo
mark.

Witnesses to mark

Manuel Gonzales, Jr.

Louis Bagneris.

The guarantee is in the handwriting of the witness
Manuel Gonzales, Jr.

From the testimony of John Oddo, we gather that he is
77 years old; that he has been in this country about 30 years;
that he was engaged in the business of selling bananas, wood, and
charcoal; he does not speak English very well, nor does he under-
stand every word that is spoken in English; on his examination
in English, he answered in English for some time and afterwards
through an interpreter; he can neither read nor write; he is a
man of family; he does not know how old his children are, some of
them were born in Italy; he has retired from business for the last
ten years on account of age; he never did any business with Bag-
neris; he met him some three years ago and signed a paper for
$400 as a guarantee for his son; he signed the paper down at the
Barracks next door to the barroom; there were present his son
Tony, and some gentleman; Louis Bagneris wrote the paper; it was
written in ink; he was asked to sign the paper; he told them he
could not write; so Bagneris signed the paper and after signing
it he read it to him as a guarantee for $400; his son knows how
to sign, but he does not read or write much; he went to school
here; his son was born in Italy; he does not know his age; the
next time he saw Bagneris was when his son told him Bagneris
wanted to see him; he went with his son to see Bagneris, and met
him next door to the barroom at Bagneris' place of business; his

281

son and Bagneris did the talking; he listened; Bagneris told him "he was going to renew the paper he had signed three years before"; he asked Bagneris whether his son owed him anything and he said, no; during this conversation there were present only "him, his son, and Mr. Louis"; then Mr. Andry came in with a paper already written out and told him: "Just touch the pen"; and he asked Andry to read to him what he had signed, and Andry folded the paper up and told him he was in a hurry and had no time and went off; he did not know what he had signed; Bagneris and Andry signed the paper; Gonzales had signed it before; Andry kept the paper and took it along with him; it was written in pencil; the first document, the guarantee was written in ink; the confession of judgment annexed to the petition is not the paper to which he affixed his mark; he saw Bagneris only twice in his life; on the occasions of signing the guarantee and the alleged confession of judgment; the last paper he signed had "like a cow" on the paper; like the document for the guarantee, he cannot remember seeing a paper like that purporting to be his confession of judgment; Bagneris told him he had lost the original guarantee.

Anthony Oddo is 43 years old; went to school very little; does not know how to read or write; can sign his name so anybody can understand it, that is about all; has been a meat butcher for 18 years; has been dealing with Bagneris a little over three years; his dealings commenced in the following manner: He went to see him on a Wednesday, and asked him if he would like to buy for him; Bagneris answered yes provided he gave security; so on Friday he went with his father, and Bagneris wrote up a paper for $400; and his father just touched the pen; Bagneris wrote the paper on a small bill head, and read it out; he turned his hides over to Mc Shane; the business was done in the name of John Oddo; the bill head filed in this case, the guarantee, is not the one his father signed, because the bill head he signed was smaller and was written by Bagneris while the one filed is written by Gonzales or Mandy and the one his father signed was for $400 only; later on a Monday, Bagneris told him that the old paper which his father signed was getting old and that he would like to have it renewed; on Tuesday he went to Bagneris with his father; his father asked

Bagneris whether he owed him any money and Bagneris said "no, what little he owes, in one or two months he will pay that up"; after that Bagneris sent his clerk Mandy (Gonzales) for Mr. Andry; Mr. Andry came in with some paper and made his father sign with his cross; his father asked Andry to read the paper; Andry said: "That's all right, that's that old paper you signed and renewing it over again"; the paper was not read to him; Bagneris told him he was going to renew the old paper; the confession of judgment is the paper he refers to and he recognizes it; he never saw the document filed in this case and purporting to be his father's guarantee; that is not the one his father signed.

Salvadore Oddo, a son of the plaintiff, 48 years old, says that some three years ago he was told that his father had called on Bagneris at the slaughterhouse; he asked Bagneris what it was for, and Bagneris told him: "He just come down to sign a note as guarantee for your brother for $400"; after the suit was filed he met Bagneris and blamed him for suing an old man like his father, that if he had come to him he could have paid that little bill for $400, and Bagneris told him his brother knew all about it; he never spoke to Bagneris about his father's business except on those two occasions.

Sylvain M. Bouche testifies that one day while he was waiting in Bagneris' office, Anthony Oddo and his father were there signing some papers; Bagneris told him afterwards that the old man had signed $400 security for his son; that was in May or June 1914, on a Friday; he had never seen John Oddo before, nor since, except on this day; he is not on speaking terms with Bagneris.

Andrew J. Mc Shane is in the hide business; he bought hides from John Oddo; the man he dealth with is Anthony Oddo, although he always knew him, and dealt with him, as John Oddo; his first transaction with him was in May 1914; recently, under orders from John Oddo all checks due to him were delivered to Bagneris; he cannot say what was done years ago, because his bookkeeper is dead.

Louis Bagneris testifies that the meat was sent in the name of John Oddo because he was security for the meat; the hides were

also sent to Mc Shane in his name; everything was on the name of John Oddo, because Anthony Oddo was on the black list and could not buy in his name, because he owed the merchants; he never stated to any of Oddo's sons, nor to anyone else, that the security he had was for $400; if his security had been only for that amount he would not have extended the defendant credit to the extent of eight hundred and some odd dollars; John Oddo affixed his mark to the confession of judgment in his presence; it was read by Mr. Andry in the presence of Manuel Gonzales, John Oddo and his son; prior to the security he dealt with Anthony Oddo on his rpomise to fetch his father to sign a guarantee; the witness Bouche gave him a check on a bank in which he had no funds.

Manuel Gonzales is clerk for Louis Bagneris for the last six years and a half; the guarantee dated July 8th, 1914 is in his handwriting and witnessed by him; John Oddo made his cross to it in his presence; the confession of judgment is written by Mr. Andry; he saw Oddo affix his mark to it, and he witnessed it; the meat was bought in the name of John Oddo and delivered also in that name; Mr. Andry read out the confession of judgment to Mr. Oddo and his son and himself, and he witnessed it and signed it.

L. Fred Andry, Notary Public, swears that the confession of judgment dated May 30th, 1917, is in his handwriting; that it was signed oy John Oddo and his mark affixed in his presence, and also by Mannie Gonzales and Louis Bagneris in his presence;

Q. Was that document read to John Oddo? A. Absolutely, yes.

Q. Read by you? A. Yes, sir.

Q. Any objection made? A. None at all.

John Oddo does not deny that he signed a guarantee for his son; he admits that he signed one for $400; his only denial is that he signed for $850. His testimony and that of his son upon this point are contradicted by Bagneris, by Gonzales, and by the surrounding circumstances. John Oddo and his son are also contradicted, and we think successfully, upon the matter of the confession of judgment, as we shall show, and this contradiction affects their credibility as regards the guarantee. But after all this guarantee is only an element leading up to the confession of judgment and is not the foundation of the judgment. The

judgment might stand even without the guarantee.

The judgment based upon the confession is attacked upon the ground that John Oddo did not know what he was signing, that he cannot read, and that the confession was not read to him, and that he was led to believe that he was renewing an act of suretyship -, and that he did not owe the debt he acknowledged owing.

The law does not look with favor upon such attacks. It has been repeatedly held that it will not avail one to allege that he did not know what he was signing, or that he does not know how to read. 22 A., 14; 26 A., 594; 34 A., 720; 35 A., 850; 855; 33 A., 1429; 36 A., 476 (477), 620; 37 A., 553; 41 A., 18; 106 La., 790; 117 La., 390 (339); Cooley on Torts p. 488.

In 41 A., 18, the Court said:

"If he read the act there was no excuse for error; if he did not read it, such gross negligence would leave him with still less excuse".

In 117 La., 399, the Court said:

"Moreover if the defendant could read, it devolved upon him to read it; if he could not read, then it devolved upon him to have it read to them and to listen attentively while it was being read to him".

In 106 La., 790, the Court again expressed itself:

"We have only to say that the law does not compel people to read or to inform themselves of the contents of instruments which they may choose to sign, but that, save in certain exceptional cases, it holds them to consequences in the same manner and to the same extent as though they had exercised those rights".

The presumption is that parties are aware of the contents of writings to which they have affixed their signatures. This presumption grows when applied to a man 77 years old, assisted by his son 43 years of age. The burden of proof is upon them to establish with reasonable certainty that they have been deceived. In this case there are several discrepancies between the testimony of the father and of the son. The father says Bagneris answered that Anthony Oddo owed him nothing; Anthony Oddo says Bagneris' words were: "no, what little he owes, in one or two

months he will pay that up". Again, the father testifies that Andry did not read the confession to him because he had no time and was in a hurry; the son testifies that Andry told them that it was nothing but a renewal of his guarantee. The father says the confession was written in pencil, and had something like a cow upon it, and the paper annexed to the petition is not the one he signed; the son, on the contrary, recognizes the paper as the one his father signed.

But it is not sufficient for a plaintiff to allege irregulatities in the method of obtaining a judgment. He must show that he had a defense to the suit and that it would be against good conscience to execute the judgment. 3 A., 646; 6 A., 799; 15 A., 273; 18 A., 497 (507); 28 A., 51; 48 A., 1529; 1 H. D., 641 18; 2 Story Equity 887.

"A court of equity does not interfere with judgments at law, unless the complainant has an equitable defense, of which he could not avail himself at law, because it did not amount to a legal defense, or had a good defense at law, which he was prevented from availing himself of by fraud or accident, unmixed with negligence of himself or his agents". 58 U. S., 442.

"A court of equity will not interfere with the enforcement of a judgment recovered at law, unless it is unjust and unconscionable; and therefore such relief will not be granted unless the complainant shows that he has a good and meritorious defense to the original action". 23 Cyc, 1031 14 - id p. 991 9 - B and numerous authorities in support of the proposition: 30 Cent. Dig. title "Judgment" 849.

"In order to obtain equitable relief against a judgment rendered on the consent of the agent of an absent defendant alleged to have been fraudulently obtained it must be averred and shown that there is a valid defense on the merits. 110 U. S., 184 (187).

In the case under consideration, John Oddo alleges under oath, in his petition, "that he is not indebted to the said Bagneris in the amount claimed by him and alleged to have been

confessed by him". That is technically true, because the debt was that of his son. But he was the surety for his son, and therefore liable for his debt. In no part of his testimony does Anthony Oddo deny that he is indebted unto Bagneris in the sum of the judgment, say $830.90, or that it would be unconscionable to execute the judgment.

The judgment of the District Court is therefore affirmed.

April 17th, 1919.