# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

# 23-560

**MICHELLE RUNG**

**VERSUS**

**DEONDRICK BESSARD**

\*\*\*\*\*\*\*\*\*\*
ON APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 112096-H1
HONORABLE THOMAS J. FREDERICK, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**JONATHAN W. PERRY**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Shannon J. Gremillion, Jonathan W. Perry, and Ledricka J. Thierry, Judges.

**AFFIRMED.**

Raven Matthews Miller
Matthew Law & Mediation, LLC
406 Pere Megret Street
Abbeville, LA 70511
**COUNSEL FOR APPELLANT:**
    Deondrick Bessard

Michelle Rung
In Proper Person
205 N. Guidry Avenue
Kaplan, LA 70548

**PERRY, Judge.**

In this case which involves the Domestic Abuse Assistance Statutes, La.R.S. 46:2131–2143, Deondrick Bessard ("Bessard") appeals the trial court's grant of a protective order filed against him by his wife, Michelle Rung ("Rung"). For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

On March 27, 2023, Rung filed a petition under the provisions of La.R.S. 46:2131–2143 for protection from abuse. In her pleading, Rung named Bessard as the defendant and contended that he stalked her and threatened her with bodily harm. In the petition, Rung wrote:

> I left my husband 6 weeks ago. Since leaving he has constantly made threats (one I have on recording). We do have 4 children together. So I have been trying to keep things together. So I have been trying to keep things on speaking terms. One day we're able to do that and the next he's crazy. He broke in my house stealing things that belong to both myself and the kids. I have him on video returning those things. Since leaving he has constantly harassed me. Showing up to my house even after letting him know he's not welcome there. One night at around 2 AM he came over and raised up the bedroom window trying to get in the house. I have him on video admitting to this. I recently found a tracking device he put in my car. I went to the Kaplan Police as well as Abbeville. Nothing was done. I still have the air tag as I know it could be tracked back to his phone[.]

In Rung's petition, she sought to prohibit Bessard from: (1) abusing, harassing, assaulting, stalking, following, tracking, monitoring or threatening her; (2) contacting her personally, through a third party, or via public a posting; and (3) going within 100 yards of her residence. Rung further requested that Bessard be ordered: (1) to stay away from her place of employment; and (2) to pay costs of court. After the trial court reviewed Rung's signed and dated written affirmation attesting that the facts and circumstances contained in her petition were true and correct, it granted an ex parte Order of Protection, Temporary Restraining Order ("TRO"). This TRO was to remain effective until a hearing would be held on April 13, 2023. As required

by La.R.S. 46:2135(B), Bessard was given notice of the TRO and the hearing on the rule to show cause. Among the items shown in that notice, Bessard was ordered to show cause why: (1) it should not be found that he had stalked Rung and had threatened her; (2) he should not be made to pay court costs; and (3) the TRO should not be made a Protective Order.

On April 13, 2023, the parties appeared before the Hearing Officer ("HO"), Shawn Eller. At that time, the HO found, "Petitioner presented text messages where Defendant admitted to sexually assaulting her and presented audio recording of verbal threat of harm." Accordingly, the HO recommended that the Protective Order be granted and "[t]his suit should be consolidated with Docketed Proceeding Michelle Rung vs. Deondrick Bessard #99415 M1." At the end of the HO's recommendations and above the signatures of Bessard and Rung appeared language which indicated that they acknowledged their right to object to the HO's recommendation in the Protective Order, waived that right, and acknowledged that they read, understood, and agreed to abide by the terms of an unspecified item. Thereafter, on that same day the trial court signed a Protective Order which incorporated the relief Rung sought and made it effective to April 13, 2024. Above the trial court's signature appears the following language:

> The issuing court certified that it has jurisdiction over the parties and the subject matter under the laws of the State of Louisiana; that the defendant was given reasonable notice and an opportunity to be heard sufficient to protect the defendant's right to due process before this order was issued; or if the order was issued *ex parte*, the court ordered that the defendant be given reasonable notice and an opportunity to be heard within the time required by the laws of the State of Louisiana, and in any event, within a reasonable time after the order was issued, sufficient to protect the defendant's due process rights.

2

Below the trial court's signature are the signatures of Rung and Bessard. On April 13, 2023, a certificate of mailing of the Protective Order as required by La.Code Civ.P. art. 1913 was sent to Rung and Bessard.

Thereafter, on April 18, 2023, an attorney enrolled as counsel for Bessard and simultaneously filed an objection to the recommendation of the HO. The trial court denied the objection as being untimely under the court rules. Bessard then perfected this appeal.

## ASSIGNMENTS OF ERROR

Bessard has perfected two assignments of error, namely:

1. The trial court erred in failing to have a recording of the proceedings before the hearing officer which deprives Defendant/Appellant of having a transcript to corroborate his assertions of: (a) not being allowed to testify in full and not being allowed to call his witnesses who were present at court; (b) not being told that any objection must be made that day; and (c) not being explained the proceedings or their resulting effects on custody and visitation of his children.

2. The trial court erred in directing a pro se defendant in the quasi-criminal protective order proceeding to sign a hearing officer conference report on domestic matters waiving his right to objection where: (a) the blank specifying what was being waived is left blank; (b) the form is not clear that he is waiving his right to a hearing; and (c) there is no explanation of the consequences of the waiver.

## ANALYSIS

*Failure to record the proceedings.*

Initially, Bessard contends that the trial court erred when it failed to have the hearing officer proceeding recorded and that this adversely affected him.

A trial court's determination to grant or deny a protective order will not be reversed on appeal absent an abuse of discretion. *Mitchell v. Marshall*, 02-15 (La.App. 3 Cir. 5/1/02), 819 So.2d 359. To reverse a protective order, the appellate court must review the record in its entirety and conclude that a reasonable factual

basis does not exist for the finding and the factfinder is clearly wrong or manifestly erroneous. *Launey v. Launey*, 20-72 (La.App. 3 Cir. 11/12/20), 307 So.3d 280.

As provided in La.R.S. 46:2135(I), "[t]he initial rule to show cause hearing . . . may be conducted by a hearing officer who is qualified and selected in the same manner provided in R.S. 46:236.5(C). The hearing officer shall be subject to the applicable limitations and shall follow the applicable procedures provided in R.S. 46:236.5(C)." Furthermore, the hearing officer shall hear and make recommendations to the court on all protective orders. *Id.* Additionally, La.R.S. 46:236.5(C) provides, in pertinent part:

> (3) The hearing officer shall act as a finder of fact and shall make written recommendations to the court concerning any domestic and family matters as set forth by local court rule, including but not limited to the following matters:
>
> . . . .
>
> (k) Hear and make recommendations on all protective orders filed in accordance with R.S. 46:2131 et seq., R.S. 46:2151 et seq., R.S. 46:2171 et seq., R.S. 46:2181 et seq., and the Children's Code and on all injunctions filed in accordance with R.S. 9:361 et. seq., 371, and 372 and Code of Civil Procedure Articles 3601 et seq., which involve personal abuse, terrorizing, stalking, or harassment; and hear and make recommendations on all motions for contempt of court and motions to extend, modify, or dissolve protective orders and injunctions.
>
> . . . .
>
> (5) The written recommendation of the hearing officer shall contain all of the following:
>
> > (a) A statement of the pleadings.
> > (b) A statement as to the findings of fact by the hearing officer.
> > (c) A statement as to the findings of law based on the pleadings and facts, including his opinion thereon.
> > (d) A proposed judgment.
>
> (6) A copy of any written recommendations, orders, or uncontested judgments rendered by the hearing officer shall be provided to the parties and their counsel at the time of the hearing

4

officer's ruling, if present. Any party who disagrees with a judgment or ruling of a hearing officer on a matter set forth in Paragraph (3) may file a written objection to the findings of fact or law of the hearing officer within the time and manner established by court rule. The objection shall be heard by the judge of the district court to whom the case is assigned. Upon filing of the objection, the court shall schedule a contradictory hearing where the judge shall accept, reject, or modify in whole or in part the findings of the hearing officer. If the judge in his discretion determines that additional information is needed, he may receive evidence at the hearing or remand the proceeding to the hearing officer.

(7) If no written objection is filed with the clerk of court within the time and manner established, the order shall become a final judgment of the court and shall be signed by a judge and appealable as a final judgment. The judgment after signature by a district judge shall be served upon the parties in accordance with law.

Although Chapters 34 and 35 of the Louisiana District Court Rules address Hearing Officer and Domestic Commissioner procedures for domestic violence protective orders, the following specific rule has been adopted in the Fifteenth Judicial District Court, to wit:

A Hearing Officer Conference shall be scheduled with the Hearing Officer, who shall determine the issues of the case and in conjunction therewith, shall hear and make recommendations regarding all protective orders filed in accordance with R.S. 46:2131 et seq., R.S. 46:2151 et seq., and on all injunctions filed in accordance with R.S. 9:361, 371, and 372; and hear and make recommendations on all motions for contempt of court and motions to extend, modify, or dissolve protective orders and injunctions. There will be no court reporter present and no record made of the proceeding. The only record will be a minute entry by the minute clerk. The Hearing Officer shall initially make the recommendation orally and the parties shall assent or object to the recommendation at the conclusion of the hearing. If there is no objection the Hearing Officer shall prepare a written recommendation and a proposed Protective Order judgment on the appropriate LPOR form which shall be reviewed and signed by the parties prior to its submission to the appropriate judge for signature. If either party objects, the Hearing Officer shall prepare a written recommendation without preparing a recommended Protective Order judgment and the matter shall be fixed on the docket of the appropriate division for the matter to be heard de novo.

La.Dist.Ct.R. App. 34.0(E); *see also* La.Dist.Cr.R. App. 35.0 (setting additional rules for filing an objection to a Hearing Officer Recommendation).

To better frame the question now before us, reference must be made to jurisprudence regarding due process as it pertains to contradictory hearings. Addressing due process in *Fairbanks v. Beninate*, 20-206, pp. 13–14 (La.App. 5 Cir. 12/23/20), 308 So.3d 1222, 1232, *writ denied*, 21-250 (La. 3/23/21), 313 So.3d 272, the appellate court stated:

> Due process generally requires some kind of hearing and notice of that hearing. *Paschal v. Hazlinsky*, 35,513 (La.App. 2 Cir. 12/19/01), 803 So.2d 413, 417. But, no one has a vested right in any given mode of procedure. *Lott v. State, through Department of Public Safety and Corrections*, 98-1920 (La. 5/18/99), 734 So.2d 617, 621. States may determine the process by which legal rights are asserted and enforced so long as a party receives due notice and an opportunity to be heard. *Id*. at 621-622. It is well established that due process is not a technical conception with a fixed content unrelated to time, place and circumstances. *Fields v. State, through Department of Public Safety and Corrections*, 98-611 (La. 7/8/98), 714 So.2d 1244, 1251. Due process is flexible and calls for procedural protections demanded by the particular situation. *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). The determination of what procedural safeguards are required in order to meet due process standards depends on the nature of the proceeding and the nature of the right or interest affected by the proceeding. *State ex rel R.C. v. Clarke*, 33,023 (La.App. 2 Cir. 10/27/99), 743 So.2d 843, 849.

Against that backdrop, the purpose and procedural requirements of La.R.S. 46:2131–2143, the Domestic Abuse Assistance Statutes, are further instructive on the issue of due process. In *Lee v. Smith*, 08-455, p. 6 (La.App. 5 Cir. 12/16/08), 4 So.3d 100, 104, this court stated:

> The purpose behind the entire legislative scheme in Louisiana Revised Statutes 46:2131, et seq., is to provide relief to victims of domestic violence by establishing "a civil remedy for domestic violence which will afford the victim immediate and easily accessible protection." LSA-R.S. 46:2131; *Bays v. Bays*, 00-1727, p. 5 (La. 2/21/01), 779 So.2d 754, 758. LSA-R.S. 46:2136 permits a court to grant a protective order to prevent the possibility of family violence, provided a petition is filed requesting the order and the defendant is afforded reasonable notice consistent with due process. *Wise v. Wise*, 02-574, p. 2 (La.App. 5 Cir. 11/13/02), 833 So.2d 393, 394. The petition must detail the facts and circumstances concerning the alleged abuse. LSA-R.S. 46:2134. By requiring the party seeking a protective order to file a petition specifying the allegations of abuse, the legislature has ensured that a

6

defendant's constitutional due process rights, particularly the right of reasonable notice, will be observed. *Bays*, p. 6, 779 So.2d at 758; *Branstetter v. Purohit*, 06-1435, p. 5 (La.App. 4 Cir. 5/2/07), 958 So.2d 740, 743.

From the outset, we observe that neither the Domestic Abuse Assistance Statute nor the provisions of La.R.S. 46:236.5 specify the manner of the contradictory hearing or mandate that the proceedings before the hearing officer be recorded for later review. *See Barber v. Barber*, 15-1021 (La.App. 1 Cir. 4/15/16) (2016 WL 1535195), *writ denied*, 16-934 (La. 6/17/16), 192 So.3d 771.

In the present case, the various provisions of La.R.S. 46: 2131–2143, La.R.S. 46:236.5, and the special rules of the Fifteenth Judicial District Court regarding the issuance of protective orders, comport with due process as they each provide notice of the proceeding and allow the parties the opportunity to be heard. After reviewing the record, it is evident that Bessard's due process rights have been met. His presence at the contradictory hearing as noted on the HO's recommendation shows that he received proper notice, and his signature at various places further confirms his presence at the contradictory hearing. Simply stated, because "[t]estimony is not necessary for a contradictory hearing to have taken place[,]"it logically follows that a recording of the proceeding is not necessary. *Jennings v. Jennings*, 21-386, p. 11 (La.App. 4 Cir. 12/1/21), 332 So.3d 179, 187.

*Effectiveness of Bessard's signature.*

Bessard next contends that the waiver of his right to object to the HO's recommendation that he signed has no legal effect because a blank was left in the form. Above Bessard's signature on the HO's findings and recommendations appears the following language:

> I understand that I have the right to object to the Hearing Officer's Recommendation in the Protective Order hearing and have my case heard by the assigned Judge. I hereby waive my right to object to the

7

Recommendation and my signature herein acknowledges that I have read, understand and agree to abide by the terms of this _____.

Although the absence of language in this limited instance is troubling, such failure is not determinative because a reading of the entirety of the record establishes otherwise. *Compare Landry v. Landry*, 53,921 (La.App. 2 Cir. 6/9/21), 323 So.3d 456 (finding that the cumulative effect of errors can interdict a proceeding.). The only matter pending before the trial court was Rung's petition for a protective order, and the HO's recommendation referenced only a protective order. Likewise, the Uniform Abuse Prevention Order signed by the trial court specified that it was issued to address domestic abuse under the provisions of La.R.S. 46:2131; although the form may have indicated other legislative grounds may have been available, only domestic abuse was specified and was properly marked with "x". Moreover, pursuant to the provisions of La.R.S. 46:236.5(C)(6), "[a] copy of any written recommendations, orders, or uncontested judgments rendered by the hearing officer shall be provided to the parties and their counsel at the time of the hearing officer's ruling, if present." Bessard has made no argument that the HO failed to comply with this procedure. Finally, and most importantly, Bessard and Rung affixed their signatures to the proposed Protective Order judgment *prior to its submission to the appropriate judge for signature* as further evidence that there was no objection to the Protective Order. Had either Bessard or Rung objected, their signatures would not have been affixed to the proposed Protective Order and the matter would have then been immediately fixed for a further contradictory hearing before the trial court.

"[A] party who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, that he did not understand it, or that the other party failed to explain it to him." *Aguillard v. Auction*

*Mgmt. Corp.*, 04-2804, p. 22 (La. 6/29/05), 908 So.2d 1, 17. *See, e.g.*, *Bagneris v. Oddo,* 2 Pelt. 278 (La.App. 1919) (stating: "The burden of proof is upon them to establish with reasonable certainty that they have been deceived."). Additionally, "[i]f a party can read, it behooves him to examine an instrument before signing it; and if he cannot read, it behooves him to have the instrument read to him and listen attentively whilst this is being done." *Snell v. Union Sawmill Co.*, 105 So. 728 (La.1925). Moreover, as was observed in *Action Finance Corp. v. Nichols*, 180 So.2d 81, 83 (La.1965), "the signatures to an instrument evidence agreement of the parties to be bound by the provisions of the instrument; that a signature consists of both the act of writing one's name and of the intention thereby of finally authenticating the instrument."

For the foregoing reasons, we find no merit to Bessard's contention that his signature did not constitute an acknowledgement of his right to object to the HO's recommendation and did not comprise a valid waiver of that right.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this proceeding are assessed to Deondrick Bessard.

**AFFIRMED**.

9