485 So.2d 231 (1986)
Bertha BRABHAM, Plaintiff-Appellee,
v.
June Sawyer Brabham HARPER, Defendant-Appellant.
No. 84-1131.
Court of Appeal of Louisiana, Third Circuit.
March 5, 1986.
Rehearing Denied April 14, 1986.
*232 Larry W. Rivers, Alexandria, for defendant-appellant.
Robert Royer, Alexandria, for plaintiff-appellee.
Before GUIDRY, LABORDE and KNOLL, JJ.
LABORDE, Judge.
Plaintiff-appellee, Bertha Brabham, filed this action against her daughter-in-law, June Sawyer Brabham Harper, to reform a contract of sale to which each was a party. The district judge ordered the contract reformed to reflect a conveyance by Bertha of only her interest in the community formerly existing between her deceased son, Raymond Ural Brabham, and his wife, June Sawyer Brabham. We reverse.
Raymond Ural Brabham died intestate on June 19, 1973. He was survived by his mother, Bertha Brabham, and by his wife, June Sawyer Brabham. Raymond and June had no children. Raymond's estate consisted not only of the community property acquired by him and his wife, but also of a tract of land, owned separately, which Raymond had inherited from his father. On November 2, 1973, Bertha and June executed an authentic act by which Bertha, for the price of $25,000.00, conveyed unto June "all of her right, title and interest in all of the property in and belonging to the Succession of Raymond Ural Brabham, deceased, being the real estate, personal property, ... and property of every nature whatsoever, belonging to the Succession of Raymond Ural Brabham, deceased." (Emphasis added). The act further provides: "Said parties did moreover declare that this is a full, final and complete transfer of the interest of Bertha Brabham fully, completely and entirely, in all of the property and all of the assets of the Succession of Raymond Ural Brabham, deceased, including all of the property of every nature whatsoever[.]" (Emphasis added).
The instrument was drafted by one C.W. Berry, Jr., Esq. The record reveals that both parties knew him well, and that he had provided legal services for Bertha's family "for quite a few years." He was engaged on this occasion by appellant. Bertha maintained at trial that her intent in signing the instrument was to convey only her interest in the community property which had been acquired by Raymond and June.[1] The litigation was triggered when Bertha attempted, several years later, to sell a piece of property formerly owned by Raymond in indivision with his sister. Bertha was under the impression (and so argued at trial) that, as Raymond's separate property, this tract had passed to her via the laws of intestate successions; she further believed (and so argued at trial) that her interest in the separately-owned land was not included in the conveyance to June. *233 Bertha testified that she trusted "lawyer Berry" so fully that she elected not to read the instrument before signing it, preferring instead to merely discuss its contents with him. The record reveals the following exchange:
"Q At the time that you went into Mr. Berry's office to sign the document that is the cause of this litigation, did you discuss with Mr. Berry at that time Raymond's inheritance from his father?
"A I said, `Mr. Berry, you have been our lawyer for quite a few years. All of the Brabhams' lawyer.' He had done a lot of work for us and also my father-in-law. So I said, `I am trusting in you that this will bewhat I'm signing, I will be signing only for the community property of June and Raymond's.' That is the way that I discussed it with lawyer Berry and lawyer Berry said, `Sure. That's all you're signing.'"
Unfortunately, we are not favored with "lawyer Berry's" recollection of his conversation with Bertha, for he did not testify at trial.
Appellant testified that she intended to acquire, for $25,000.00, all of the rights, title, and interest in the succession of her husband. On appeal, she argues that the district judge should not have admitted parol evidence to vary the terms and conditions of the sale, and that, as there was no mutual error by the parties, the written document should speak for itself. We must first address the question of whether parol evidence was admissible in this case.
Former LSA-C.C. art. 2276, in effect at all relevant times, provided:
"Neither shall parol evidence be admitted against or beyond what is contained in the acts, nor on what may have been said before, or at the time of making them, or since."
Former LSA-C.C. art. 2236, also in effect at all relevant times, provided:
"The authentic act is full proof of the agreement contained in it, against the contracting parties and their heirs or assigns, unless it be declared and proved a forgery."
Appellant cites these two provisions, in effect throughout the trial of this matter, for the proposition that when the terms of a contract are clear and unambiguous, parol evidence is never admissible. We agree that parol evidence is not admissible to clarify an act which is already clear. See White v. Rimmer & Garrett, Inc., 340 So.2d 283 (La.1976). It may, however, be admissible for other purposes.
As with any other writing, where a party to an authentic act alleges that he executed it through fraud or error, he is permitted to introduce parol testimony to support such allegations. Mitchell v. Clark, 448 So.2d 681 (La.1984). Plaintiff did allege mutual error. The district judge, therefore, properly admitted the testimony of the parties.
An action to reform a written instrument is an equitable remedy, and it lies only to correct mistakes or errors in the written instrument when such instrument, as written, does not express the true contract or agreement of the parties. Ober v. Williams, 213 La. 568, 35 So.2d 219 (1948). It is a personal action, even when applied to real estate, and the burden of proof rests on the one seeking reformation of the instrument to establish the mutual error and mistake by clear and convincing proof, parol evidence being admissible for this purpose. Fontenot v. Lewis, 215 So.2d 161 (La.App. 3rd Cir.1968) (emphasis added); Catyb v. Deville, 246 So.2d 41 (La.App. 3rd Cir.1971).
Our review of the entire record reveals that the district judge found neither fraud nor error in the transaction. Nor do we find fraud or error. We are mindful of the rule that reasonable evaluations of credibility should not be disturbed on appeal unless manifestly erroneous. Senegal v. George Theriot's, Inc., 445 So.2d 137 (La. App. 3rd Cir.), writs denied, 448 So.2d 114 (La.1984). We therefore do not question the trial judge's conclusion that Bertha *234 Brabham intended to convey less than the property which was described in the authentic act. But the judge did not make a clear finding of mutual error. Nor, in light of appellant's adamant assertions, at trial and on appeal, that the act did reflect her real intentions, can we find mutual error. The testimony was not admissible to allow plaintiff to gloss over the undeniably comprehensive character of the document, nor to qualify its terms; its sweeping language and failure to distinguish community from separate property simply do not leave room for judicial modification.
Bertha signed an authentic act prepared by an attorney with whom she was well acquainted. She insists that the attorney, acting in this instance on behalf of appellant, misrepresented the contents of the document to appellant's benefit. The attorney, however, did not testify, and we will not speculate as to what his version of the story might be. In any case, the law of Louisiana is that one who signs an instrument without reading it has no complaint. Tweedel v. Brasseaux, 433 So.2d 133 (La. 1983).
We conclude that the authentic act expresses the true agreement of the parties. Reformation under these circumstances is improper. Accordingly, the judgment of the trial court is hereby reversed, and it is ordered, adjudged, and decreed that the contract of sale be reinstated as originally drafted and signed. All costs in connection with this proceeding, at trial and on appeal, are taxed to the plaintiff-appellee, Bertha Brabham.
REVERSED AND RENDERED.
NOTES
[1] When this proceeding was filed, former LSA-C.C. art. 915 provided in pertinent part: "Should the deceased leave no descendants, but a father and mother, or either, then the share of the deceased in the community estate shall be divided in two equal portions, one of which shall go to the father and mother or the survivor of them, and the other portion shall go to the surviving spouse[.]"