755 So.2d 923 (1999)
David S. CAPDEVILLE and Eula Taylor Capdeville, Plaintiffs-Appellees,
v.
WHITE'S TEMPLE OF CHURCH OF GOD IN CHRIST, INC., Defendant-Appellant.
No. 99-1040.
Court of Appeal of Louisiana, Third Circuit.
December 22, 1999.
*924 David Emile Marcantel, Baton Rouge, for David S. Capedeville, et ux.
Kevin R. Duck, Lafayette, for White's Temple of Church of God in Christ, Inc., etc.
BEFORE: SAUNDERS, WOODARD and DECUIR, Judges.
SAUNDERS, Judge.
This matter arises from a sale by Warranty Deed and Vendor's Lien of a property by the plaintiff to the defendant for the sum of $40,000.00. The defendant made a down payment of $11,000.00. The defendant then made, pursuant to a promissory note, ninety-three payments of $311.64 to the plaintiffs, with the last payment being made on June 1, 1998.
The plaintiffs brought suit for money judgment and recognition of vendor's lien when the defendant refused to pay what the plaintiffs claim to be the balance due of $19,229.21 on the principal sum. The defendant claimed that payment was made in full.
After a finding of mutual error where the promissory note listed both an incorrect number of payments to be made and an incorrect total sale price, the trial court reformed the contract between the parties, making it consistent with the plaintiffs' assertions. We affirm.

FACTS
On August 21, 1990, David S. Capdeville (hereinafter "Plaintiff"), sold Lots 49 and 41 of Block 2 in Lincoln Heights Subdivision of Jennings, Louisiana, to Alfred White, who was representing White's Temple Church of God in Christ (hereinafter "Defendant"). Plaintiff agreed to sell the *925 property for $40,000.00, with Defendant making a down payment of $11,000.00. The remaining $29,000.00 was to be paid, evidenced by a promissory note, at 10% interest. A Sale with Vendor's Lien was prepared by an attorney, Wendell R. Miller.

LAW AND ANALYSIS
Defendant brings three assignments of error seeking a reversal of the trial court's reformation of the contract. In its first assignment, Defendant argues that the trial court abused its discretion in reforming the contract where Plaintiffs acknowledged never having read the document. Plaintiffs respond to this argument emphasizing that their failure to read the document in its entirety did not cause the error. Defendant cites Tweedel v. Brasseaux, 433 So.2d 133 (La.1983), arguing that where Plaintiffs did not read the document in its entirety, they cannot now avail themselves to a claim of error in the very document they did not read. Indeed, Tweedel provides:
The law of Louisiana is that one who signs an instrument without reading it has no complaint. As this court wrote long ago:
"She now asserts that she is not bound by this instrument, because she did not read it, and signed it in ignorance of its purport. We have only to say that the law does not compel people to read or to inform themselves of the contents of instruments which they may choose to sign, but that, save in certain exceptional cases, it holds them to the consequences, in the same manner and to the same extent as though they had exercised those rights ..." Ray v. McLain, 106 La. 780 at 790, 31 So. 315 at 319 (1901).
Id. at 138.
Tweedel offers no help to those who blindly affix their signature to documents, to-wit:
"[S]ignatures to obligations are not mere ornaments." Boullt v. Sarpy, 30 La. Ann. 494 at 495. Additionally, the courts of our state have long held that "[i]f a party can read, it behooves him to examine an instrument before signing it; and if he cannot read, it behooves him to have the instrument read to him and listen attentatively whilst this is being done." Snell v. Union Sawmill Company, 159 La. 604 at 608, 105 So. 728 at 730 (1925). Bagneris v. Oddo, 2 Pelt. 278 (La.App.Orleans 1919) held:
"The presumption is that parties are aware of the contents of writings to which they have affixed their signatures... The burden of proof is upon them to establish with reasonable certainty that they have been deceived." 2 Pelt. at 285.
Id. at 137.
In Tweedel, the complaining parties did not read the instruments signed at all, relying on information received in a telephone conversation with their lawyer. The documents were clearly titled as donations inter vivos and not as wills, as the Tweedels allegedly believed they signed. Further, the court found it significant that Mrs. Tweedel had a copy of the documents in her possession years before the lawsuit was filed.
In the matter sub judice, Plaintiffs understood that they were executing a Sale with Vendor's Lien and received $11,000.00 as a down payment toward the $40,000.00 sale price. Further, Plaintiffs understood that through their attorney, they were confecting a promissory note in his favor from Defendant in the amount of $29,000.00 with ten percent (10%) interest. This is not a case where Plaintiffs relied blindly on his attorney. That Plaintiffs failed to catch the amortization error does not rise to the level of negligence that the principles in Tweedle are designed to punish. Indeed, Plaintiffs failed to discover that ninety-three payments at $311.64 covered only half of the principal and interest owed. However, the source of error in this matter is not Plaintiffs' failure to read *926 the entire document, for even if Plaintiffs had read every word of it, there is nothing to support that they would have caught the error in computation. Indeed, the stated price and interest rate were as they intended and the inconsistencies between those numbers and the number of payments was not noticed by either party or the notary. It is not likely that any person who is not a "number cruncher" would have caught this incongruity. Failure to read and failure to compute are two different things. Tweedle requires a party to read a contract but does not ordain that any ambiguity or inconsistency therein will be interpreted against him for failure to do so. He is treated no better than a person who read the contract; he is also treated no worse. Accordingly, we find this assignment of error without merit.
We now consider Defendant's next assignment.
In his second assignment of error, Defendant argues manifest error was made when the trial judge allowed the introduction of parol evidence by Plaintiffs to negate and/or vary the terms of the contract. This court in Brabham v. Harper, 485 So.2d 231, 233 (La.App. 3 Cir. 1986), discussed the following:
An action to reform a written instrument is an equitable remedy, and it lies only to correct mistakes or errors in the written instrument when such instrument, as written, does not express the true contract or agreement of the parties. Ober v. Williams, 213 La. 568, 35 So.2d 219 (La.1948). It is a personal action, even when applied to real estate, and the burden of proof rests on the one seeking reformation of the instrument to establish the mutual error and mistake by clear and convincing proof, parol evidence being admissible for this purpose. Fontenot v. Lewis, 215 So.2d 161 (La. App. 3rd Cir.1968) (emphasis added); Catyb v. Deville, 246 So.2d 41 (La.App. 3rd Cir.1971).
In Harris v. Baird, 546 So.2d 497, 500 (La.App. 4 Cir.1989), the court concluded:
We find that the trial judge did not err in admitting the parol evidence and in relying upon it to reform the contract because parol evidence is admissible to reform an instrument to show the true intent of the parties and to correct mistakes or errors in written instruments when such instruments, as written, do not express the true agreement of the parties. Valhi, Inc. v. Zapata Corp., 365 So.2d 867 (La.App.1978); Agurs v. Holt, 232 La. 1026, 95 So.2d 644 (La. 1957); Ober v. Williams, 213 La. 568, 35 So.2d 219 (1948).
Plaintiffs assert mutual error and, for this reason, the trial judge permitted the introduction of parol evidence. In this, we find no error. As the Brabham court expressed, parol evidence is properly admitted to prove mutual error. Whether a claimant actually does prove the error is a different question. This brings us to Defendant's final assignment of error.
Defendant argues that Plaintiffs failed to prove with clear and convincing proof that mutual error existed, and therefore, Defendant assigns as reversible error the trial court's reformation of the contract. Plaintiff gave testimony indicating that he sold the property in question in 1990 to Mr. Alfred White, who, at the time, was representing White's Temple Church of God in Christ. Plaintiff explained:
Ourour agreement was that I would sell the property at forty thousand dollars ($40,000.00), and in turn, Mr. White agreed that he would give us eleven thousand dollars as a down payment. And after we agreed on that, we approached the attorney for a note of twenty-nine thousand dollars ($29,000.00) at ten percent (10%).
Wendell R. Miller was the attorney that prepared the documents for the Plaintiffs, including the sale with vendor's lien and the promissory note that accompanied it. Miller recalled that the note he prepared was for $29,000.00 and the interest rate *927 was ten percent (10%). Regarding the number of monthly payments, Miller explained:
I think II provided those numbers, and I think in preparing it, we made a mistake in the number of monthly payments that were to be made. The amount of the principal and interest payment itself, I believe was correct, butbut we made a mistake in thethe number of payments. There actually should have been more monthly payments to correspond with the amount the principal amount and the interest rate that was being charged.
Alfred Lee White, who acted on behalf of Defendant, acknowledged his signature on the sale agreement. White also stated that the agreement he understood was that, after the $11,000.00 payment, Defendant agreed to pay Plaintiffs $29,000.00 at ten percent (10%) interest.
After hearing the evidence and testimony, the trial court concluded and ruled:
All right. The court is satisfied thatfrom the testimony and the documents entered into evidence that it was the intentions of the parties to sell this property at forty thousand dollars ($40,000.00) with eleven thousand dollars ($11,000.00) being paid as a down payment, the remainder of twenty-nine thousand ($29,000.00) to be paid with ten percent (10%) interest, and that there was an error made by the notary in compiling the figures for the monthly payments. And the Court will order reformation of the agreement to show the true intent of the parties, and that is the payment of twenty-nine thousand ($29,000.00) at ten percent (10%) interest.

CONCLUSION
After having reviewed the evidence and testimony, we find no error in the trial court's finding of mutual error. It is clear that both parties intended to execute the Sale with Vendor's Lien for a price of $40,000.00 with $29,000.00 plus ten percent (10%) interest to be paid Plaintiffs, pursuant to a promissory note. We find it not only not proven, but highly unlikely, that Plaintiffs would not have charged interest on the $29,000.00 that was paid over several years. Further, we find that the trial court properly reformed the documents to remedy the mutual error.
All costs of appeal to be paid by Defendant.
AFFIRMED.