831 So.2d 474 (2002)
CHEVRON PHILLIPS CHEMICAL COMPANY, LP,
v.
SULZER CHEMTECH USA, INC., and Winterthur International America Insurance Company, et al.
Nos. 02-CA-598, 02-C-628.
Court of Appeal of Louisiana, Fifth Circuit.
October 29, 2002.
Rehearing Denied December 2, 2002.
*475 Adams and Reese, LLP, Daniel K. Rester, J. Wendell Clark, Richard B. Easterling, John B. Davis, II, E'Vinski L. Davis, Baton Rouge, LA, for Appellants Sulzer Chemtech USA, Inc. and Winterthur International America Insurance Company.
Phillip A. Wittmann, William D. Treeby, James C. Gulotta, Jr., Barry W. Ashe, Mary L. Dumestre, Kerrie A. Holmes, Stone, Pigman, Walther, Wittmann & Hutchinson, LLP, New Orleans, LA, Robert Ryland Percy, III, Percy, Pujol & Wall, Gonzales, Louisiana, for Appellee Chevron Phillips Chemical Company, LP.
Panel composed of Judges JAMES L. CANNELLA, MARION F. EDWARDS and SUSAN M. CHEHARDY.
JAMES L. CANNELLA, Judge.
Defendants, Sulzer Chemtech, USA, Inc. (Sulzer) and its insurer, Winterthur International America Insurance Company (Winterthur), appeal the denial of their Motions to Stay Proceedings Pending Arbitration in a property damage suit filed by the Plaintiff, Chevron Phillips Chemical Company LP (Chevron). We affirm.
The Plaintiff and Sulzer entered into an agreement on August 30, 2000 for Sulzer to provide labor, supervision, equipment, and materials to replace and revamp certain processing mechanisms in a SMII Recycle Column (the column), referred to as AF-4202, and located in a plant owned and operated by Plaintiff in St. James Parish. The work began on February 9, 2001. On February 11, 2001, a fire started when Sulzer employees welded new support structures inside the column. The fire escalated and resulted in catastrophic damages to the styrene-distilling unit. It caused the entire column to collapse and caused damage to property and equipment near the column, some of which belonged to third parties.
Plaintiff filed suit on January 30, 2002 against the Defendants, alleging the negligence of Sulzer employees and that the damage prevents it from continuing to produce styrene at the plant. On March 13, 2002 and March 14, 2002, Sulzer and Winterthur each filed a Motion to Stay the Proceedings Pending Arbitration. A hearing was held on May 8, 2002. On May 18, 2002, the trial judge denied the motions. He concluded that the arbitration provision in the agreement was narrow and confined to disputes related to the agreement, and not to tort issues.
The Defendants filed a writ application (No. 02-C-0628) on this issue that was consolidated herewith. Appellee argued that the writ is untimely. However, we find it was timely as it was postmarked before the expiration of the time delay. See: Uniform RuleCourts of Appeal Rule 2-13. We further conclude that the issue is appealable. The writ will be dismissed.
On appeal, the Defendants contend that the trial judge erred in determining that the arbitration agreement does not apply to this tort suit. The Defendants assert inter alia, that because Section 1.6 of the agreement requires Sulzer to "exercise due care and diligence in the performance of this Agreement," the contract as a whole indicates that the arbitration provision was intended to include acts of negligence.
The interpretation of a contract is the determination of the common intent of the parties. La. C.C. art.2045. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. C.C. art.2050. When the words of a contract are clear and explicit and lead to no absurd consequences, *476 no further interpretation may be made in search of the parties' intent. La. C.C. art.2046.
In AT & T Technologies, Inc., v. Communications Workers of America, et al, 475 U.S. 643,648-650, 106 S.Ct. 1415, 1418-1419, 89 L.Ed.2d 648, 655-657 (1986), the U.S. Supreme Court stated:
The first principle ... is that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." ...
The second rule ... is that the question of arbitrability ... is ... an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator...
The third principle ... is that, in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims. Whether "arguable" or not, indeed even if it appears to the court to be frivolous....
Finally ... there is a presumption of arbitrability in the sense that "[an] order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage ..." [Citations omitted]
Louisiana has a strong legislative policy in favor of arbitration. See: La.R.S. 9:4201 et seq.; J. Caldarera & Co. v. Louisiana Stadium and Exposition Dist., 98-294, p. 4 (La.App. 5th Cir.12/16/98), 725 So.2d 549, 551. Louisiana courts look to federal law in interpreting the Louisiana Arbitration Law because it is virtually identical to the United States Arbitration Act, 9 U.S.C. §§ 1.14. Lakeland Anesthesia, Inc. v. CIGNA Healthcare of LA, Inc., 01-1059, p. 3 (La.App. 4th Cir.2/6/02), 812 So.2d 695, 698. However, an arbitration clause will not be enforced, notwithstanding the strong presumption in favor of arbitration, unless its meaning is "reasonably clear and ascertainable." J. Caldarera & Co., 98-294 at p. 4, 725 So.2d at 551; Kosmala v. Paul, 569 So.2d 158, 162 (La.App. 1st Cir.1990).
In Crochet Equipment Co. v. Board of County Com'rs of County of Phillips, 20 F.Supp.2d 987, 989 (M.D.La.1998), the court stated:
Whether a dispute is subject to arbitration is determined by the existence of an arbitration clause that on its face appears broad enough to encompass the parties' claims. The Fifth Circuit distinguishes between broad and narrow arbitration clauses. If the clause is broad, the action should be stayed and the arbitrators will determine whether the dispute at issue is arbitrable. If, however, the clause is narrow, the court must first determine if the dispute at issue falls within the scope of the arbitration clause.
[Footnotes omitted.]
In his reasons for judgment, the trial judge here stated that the arbitration clause is narrow and unambiguous. He commented that it "seeks by its clear terms to require arbitration only with respect to disputes arising from the `scope and interpretation' of the Agreement. That is, the ambit of the ... clause extends only to issues of contract applicability, construction and interpretation. It was not intended that the parties arbitrate every possible dispute arising out of the contract in question."
*477 The clause at issue here provides in part in Section 1.6:
Any dispute to be adjudicated between the parties hereto concerning the scope or interpretation of this Agreement, shall be submitted to arbitration for resolution .... the decision of the arbitrators .... shall be in writing and shall contain the findings of fact and conclusions of law on which their decision is based.... [Emphasis added]
We agree with the trial judge. The arbitration clause in this case is narrowly confined to the "... scope and interpretation of this Agreement ..." We can say "with positive assurance" that this arbitration clause does not cover the alleged negligence of Sulzer. Thus, we find that the trial judge did not err in denying the motions to stay the judicial proceedings.
Accordingly, the judgment of the trial court is hereby affirmed. Costs of this appeal are to be paid by the Defendants.
WRIT DISMISSED, APPEAL AFFIRMED.