STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

**03-805**
**Consolidated with CW03-867**

**JOSEPH AND STACEY WILLIAMS**

**VERSUS**

**THOMAS C. LITTON, ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
ELEVENTH JUDICIAL DISTRICT COURT
PARISH OF SABINE, NUMBER 55,823
HONORABLE CHARLES B. ADAMS, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**BILLIE COLOMBARO WOODARD**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Billie Colombaro Woodard, Glenn B. Gremillion, and Elizabeth A. Pickett, Judges.

**REVERSED AND REMANDED WITH INSTRUCTIONS.**

Kenneth N. Simmons
Post Office Box 490
Many, Louisiana 71449
(318) 256-1275
Counsel for Plaintiffs/Appellees:
    Joseph Williams
    Stacey Williams

Jack L. Simms, Jr.
Post Office Box 1554
Leesville, Louisiana 71446
(337) 238-9393
Counsel for Plaintiffs/Appellees:
    Joseph Williams
    Stacey Williams

Keith Carter
Rogers, Hearne & Carter
Post Office Box 7235
Shreveport, LA 71137
(318) 861-1111
Counsel for Defendants/Appellants:
    Thomas C. Litton
    Ronald Dockens

Mark A. Begnaud
McCoy, Roberts, & Begnaud, Ltd.
Post Office Box 1369
Natchitoches, Louisiana 71458-1369
(318) 352-6495
Counsel for: Defendant/Appellant:
    Weight Loss Development- Denver,
    LLC

WOODARD, Judge.

The Defendants appeal an interlocutory ruling, denying a stay of proceedings pending arbitration. We find that the trial court erred in denying their motion. Accordingly, we reverse the ruling, and remand to the trial court to issue a stay, pending arbitration.

* * * * *

On October 25, 2002, Mr. Litton, Mr. Dockens, and the two Plaintiffs, Joseph Williams and Stacey Williams, formed Weight Loss Development-Denver, L.L.C. (WLD) in order to establish LA Weight Loss Centers, Inc., franchises in different parts of the United States. All four members signed an Operating Agreement which included an arbitration clause. However, the Plaintiffs became displeased with the company's direction and management; therefore, they stopped making their required capital contributions. WLD treated their failure to pay as a forfeiture of their memberships. Plaintiffs filed suit against WLD, its managing member, Mr. Thomas C. Litton, and its only other current member, Mr. Ronald Dockens.

On February 6, 2003, the Plaintiffs filed a "petition relative to limited liability company its dissolution and other related matters," alleging several causes of action against WLD, Mr. Litton, and Mr. Dockens. The Defendants filed a motion to dismiss or, alternatively, to stay proceedings, pending arbitration. Subsequently, the Plaintiffs amended their petition to allege new causes of action, including fraudulent inducement and claims implicating public policy. During pre-trial hearings, the parties agreed that the trial court should dispose of the arbitration issue before conducting any further proceedings.

The trial court concluded that the Plaintiffs' claim that they were fraudulently induced to sign the Operating Agreement was an inarbitrable claim. Accordingly, it denied the Defendants' motion to dismiss or stay the proceedings, pending arbitration. Defendants appeal this ruling. Thus, we must decide whether the trial court was correct.

1

* * * * *

**PROCEDURE**

Initially, we must address confusion in the procedural posture of this case. The Defendants filed, both, this appeal, bearing docket number 03-805, and a writ application, bearing docket number 03-867, which were consolidated. The Plaintiffs argue that the writ was untimely filed. However, we need not address the issue since the denial of Defendants' motion is properly appealable; therefore, we dismiss the writ[1] and review the issues in this appeal.

The Defendants assign, as error, the trial court's failure to incorporate into its written judgment all of the issues agreed upon at the hearing and oral ruling on the motion. Specifically, at the hearing, the trial court agreed that, after it decided the arbitration issue, it would certify the judgment for appeal purposes or do whatever was necessary to allow this court to review its decision and stay further proceedings until we had conducted a review. However, the written judgment did not certify the ruling for appeal nor did it order a stay of the proceedings. Subsequently, the trial court did stay the proceedings so that the Defendants could appeal, but it did not certify the judgment; rather, it found that its ruling constituted an interlocutory judgment and was appealable under La.Code Civ.P. art. 2083. We agree, and therefore, find no error in the trial court's failure to certify its initial judgment.

"[J]urisprudence has held that a judgment refusing to order arbitration is an appealable, interlocutory ruling pursuant to La.Code Civ.P. art. 2083 due to the irreparable injury that would occur were an immediate appeal not available."[2] Defendants argue that there are no deadlines or time delays in which to appeal an interlocutory judgment. However, in *Warren v. Southern Energy Homes, Inc.*,[3] this court found that La.Code Civ.P. art. 2087 governs the delay for perfecting a devolutive appeal from an interlocutory judgment and that the delay begins to run the day after the trial court's oral ruling.

---

[1]*See Chevron Phillips Chem. Co. v. Sulzer Chemtech U.S.A., Inc.*, 02-598 (La.App. 5 Cir. 10/29/02), 831 So.2d 474, *writ denied*, 03-11 (La. 3/14/03), 839 So.2d 47.

[2]*Warren v. S. Energy Homes, Inc.*, 00-1236, p. 3 (La. App. 3 Cir. 10/4/00), 771 So.2d 214, 215.

[3]771 So.2d 214.

2

Notwithstanding, under Article 2087, the appeal is timely. This article allows a party sixty days to appeal. The sixty days begins when the delay for applying for a new trial or JNOV expires. We recognize that no motion for a new trial is allowed in the case of an interlocutory decree.[4] However, in the instant case, the Defendants moved the trial court to reconsider its judgment and amend it to comport with its oral rulings. In response, the trial court did stay the proceedings to allow the Defendants to appeal the interlocutory judgment. Arguably, then, the delay did not begin to run until May 7, 2003, the date the trial court ruled on the motion to reconsider.

However, even assuming that the delay began to run from the trial court's original oral ruling, the appeal is timely. The trial court rendered its oral ruling, denying arbitration on March 14, 2003. Thus, the delay for applying for a new trial, seven days exclusive of legal holidays, would have ended on March 25. The sixtieth day from March 25 was Saturday, May 24. The Defendants appealed on May 21, just before the deadline. Accordingly, the appeal is timely, and we turn to its merits.

## CHOICE OF LAW

The trial court did not explicitly determine whether the Federal Arbitration Act (FAA) or Louisiana's arbitration laws govern this dispute. The Operating Agreement provides that Louisiana law governs it. Notwithstanding, Defendants assert that the FAA governs the arbitration provision because the Agreement affects interstate commerce. Further, the Plaintiffs' petition maintains that WLD's purpose was to develop franchise operations in different parts of the United States. The trial court relied on, both, Louisiana cases decided under the FAA, as well as well as on the state supreme court's decision in *George Engine*,[5] decided under Louisiana arbitration laws. Thus, it implicitly concluded that an analysis of fraud in the inducement of the contract would be the same under the FAA as it would under Louisiana law.

While there is no material difference in the language of the applicable provisions of the FAA and those of Louisiana's arbitration laws, there is a critical difference in the way Louisiana has interpreted that language under the state's arbitration laws and the way that the U.S. Supreme Court has interpreted the same

---

[4]*See Id.*

[5]*George Engine Co. v. S. Shipbuilding Corp.*, 350 So.2d 881 (La.1977).

language under the FAA.  Thus, the trial court erred in denying Defendants' motion without deciding which law governed.  Nonetheless, as the particular facts of this case lead to the same result under either law, we need not remand.

**JURISDICTION TO DECIDE ARBITRABILITY**

Our first inquiry concerns whether the trial court had jurisdiction to consider the validity and enforceability of the arbitration provision.[6]  As the U. S. Supreme Court outlined in *Kaplan*,[7] an arbitration dispute often presents three distinct issues.  One relates to the merits of the claims; another concerns whether the parties agreed to arbitrate those merits (arbitrability); and, the last concerns who has jurisdiction to decide the second matter.[8]  The latter constitutes our first inquiry.  We must decide whether the trial court, even, had jurisdiction to determine the arbitrability of Plaintiffs' claims.

In *Kaplan*, the Court found that the question of "who [court or arbitrator] has the primary authority to decide arbitrability turns upon what the parties agreed about *that* matter."[9]  Accordingly, we look to the arbitration provision to see if the parties provided, either, for the court or for the arbitrator to decide whether the parties agreed to arbitrate the merits of the dispute.

The arbitration clause in the instant case states:

> Any controversy or claim *arising out of or relating to* this Agreement shall be submitted to arbitration before one arbitrator in Natchitoches, Louisiana, in accordance with the Commercial Arbitration Rules of the American Arbitration Association.  Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.  Arbitration shall be the exclusive, final, and binding method of resolution of any claim or controversy between the parties to this Agreement and must be initiated within 180 days after the claim or controversy first arises.  Failure to timely initiate arbitration shall constitute a waiver of the claim or controversy.

---

[6]*See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 115 S.Ct. 1920 (1995).

[7]*Id.*

[8]*See Id.*

[9]*Id at* 943.

4

(Emphasis added.)

While this language is fairly broad, *Kaplan* directs that the arbitration provision must *explicitly* give the arbitrator the power to decide **arbitrability**; otherwise, there is a presumption that the court will make that decision. The *Kaplan* Court stated:

> Courts should not assume that the parties agreed to arbitrate arbitrability unless there is "clea[r] and unmistakabl[e]" evidence that they did so. In this manner the law treats silence or ambiguity about the question "*who* (primarily) should decide arbitrability" differently from the way it treats silence or ambiguity about the question "*whether* a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement"—for in respect to this latter question the law reverses the presumption.[10]

(Citations omitted).

The provision in the instant case does not contain language that explicitly gives to the arbitrator the power to determine arbitrability. Accordingly, the trial court correctly found that it had jurisdiction to determine whether the claims were arbitrable.

Arbitrability encompasses whether the merits of a particular dispute can lawfully be submitted to arbitration (subject-matter arbitrability), as well as whether the parties have, in fact, agreed to submit the merits of that dispute to arbitration (contractual arbitrability).[11] Plaintiffs attack both the subject-matter arbitrability and the contractual arbitrability of their claims.

**ARBITRABILITY OF FRAUD IN THE INDUCEMENT IN PARENT CONTRACT**

The Plaintiffs allege that they were fraudulently induced into signing the main contract—the Operating Agreement—because it did not provide the members with equal management responsibilities, as Mr. Litton had previously promised them it would. However, they do not allege that the fraudulent inducement or the resulting

---

[10]*Id*. at 944-45.

[11]THOMAS E. CARBONNEAU, CASES AND MATERIALS ON THE LAW AND PRACTICE OF ARBITRATION 17 (Juris Publishing 2001) (1997).

error vitiated their consent to submit claims concerning the Agreement to arbitration rather than to the court.

The trial court confined its analysis to whether the allegation of fraud had to relate to the arbitration clause, itself, rather than to the main contract (the Operating Agreement), in order to defeat arbitration. It concluded that the allegations did not have to directly concern the arbitration provision in order for the court to retain jurisdiction. However, the U.S. Supreme Court has mandated that we take the opposite approach, determining, first, whether the arbitration agreement is valid and enforceable and, then, address the validity of the main contract, only, if we find that the agreement to arbitrate is invalid.[12] Otherwise, the validity of the main contract is a question for the arbitrator. This is where state and federal theory diverge.

### FEDERAL LAW VERSUS LOUISIANA LAW

Louisiana Revised Statute 9:4202 is identical to Section Three of the FAA, except for the bracketed language below, which only the FAA contains:

> If any suit or proceedings be brought [in any of the courts of the United States] upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which suit is pending, upon being satisfied that the issue involved in the suit or proceedings is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until an arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with the arbitration.

Likewise, La.R.S. 9:4201 parallels Section Two of the FAA. Louisiana Revised Statute 9:4201 provides:

> A provision in any written contract to settle by arbitration a controversy thereafter arising out of the contract, or out of the refusal to perform the whole or any part thereof, or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contract*.

---

[12]*See Prima Paint Corp. v. Flood & Conklin*, 388 U.S. 395, 87 S.Ct. 1801 (1967).

And, Section Two of the FAA provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contract.*[13]

(Emphasis added.)

The U.S. Supreme Court interprets the above language, under the FAA, to permit an examination, only, of the arbitration provision, without regard to the main contract or parent contract when deciding whether the arbitration provision is valid, irrevocable, and enforceable.[14]  Contrarily, Louisiana finds that this same language presupposes that there is a valid parent contract; therefore the court retains jurisdiction to examine the validity, not only of the arbitration provision, but of the parent contract as well.[15]

*Separability*

"Under the separability doctrine, the arbitral clause has an autonomous legal existence.  The nullity of the main contract, therefore, does not invalidate the agreement to arbitrate, unless the moving party establishes that the nullity also affects the latter provision."[16]  Essentially, this means that an arbitration provision in a contract is a contract within a contract; thus, under this doctrine, we treat them as two separate contracts.

Addressing the precise issue we are faced with, the United States Supreme Court applied the separability doctrine in *Prima Paint Corp. v. Flood & Conklin*

---

[13]9 U.S.C. § 2.

[14]*Prima Paint Corp.,* 388 U.S. 395.

[15]*George Engine Co.,* 350 So.2d 881.

[16]CARBONNEAU, *supra,* n.7 at 16.

7

*Manufacturing Company*.[17] It found that, under the FAA, the court had jurisdiction to "consider only issues relating to the making and performance of the *agreement to arbitrate*."[18] However, it was not permitted to "consider claims of fraud in the inducement of the *contract generally*."[19] (Emphasis added.)

However, in *George Engine*, our state supreme court rejected the doctrine's application in cases decided under Louisiana's arbitration laws. Instead, under state law, we treat the arbitration provision as a part of the parent contract.[20]

Accordingly, before ordering arbitration, federal law looks only at the arbitration provision's validity, while Louisiana law examines the parent contract's validity as well.

## CONTRACTUAL ARBITRABILITY OF FRAUD UNDER FAA

The trial court's analysis rejects the U.S. Supreme Court's pronouncement on the doctrine of separability, finding that it is not compelled to adopt the Supreme Court's interpretation, even, where the FAA governs. It relies on *Sun Drilling Products Corp. v. Rayborn*,[21] a fourth circuit case, in which the court found that an allegation of fraud in the inducement of a contract containing an arbitration clause was sufficient to deny arbitration, even, where the FAA governed.

The *Rayborn* court used *Doctors Associates v. Casarroto*,[22] a U.S. Supreme Court decision subsequent to *Prima Paint*, to justify an application of state law in cases in which a party alleges fraud in the inducement of a contract containing an arbitration provision. Specifically, the Court in *Casarroto* recognized that "the text of § 2 [of the FAA] declares that state law may be applied if that law arose to govern issues concerning the validity, revocability and enforceability of contracts

---

[17]388 U.S. 395.

[18]*Id*. at 404.

[19]*Id*.

[20]*George Engine Co.*, 350 So.2d 881.

[21]97-2112 (La.App. 4 Cir. 12/3/97), 703 So.2d 818, *writ denied*, 98-278 (La. 3/13/98), *cert. denied*, 525 U.S. 1000, 119 S.Ct. 508 (1998).

[22]*Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 116 S.Ct. 1652 (1996).

generally."[23] Recognizing that, under Louisiana law, fraud is a "ground [that] exist[s] at law . . . . for the revocation of any contract,"[24] *Rayborn* retained jurisdiction to determine claims of fraud in the inducement in the parent contract. However, by ignoring the context in which the Supreme Court made this statement, *Rayborn* misinterpreted it. This language, allowing application of state law, refers to the court's initial inquiry, which is confined to the arbitration provision, itself.[25]

The issue in *Cassaroto* was whether a Montana court could apply its own state law to an *arbitration provision* when that law was designed to apply *only* to arbitration contracts, not to any other types of contracts. The Supreme Court found that Montana's law impermissibly discriminated against arbitration provisions and, therefore, violated the FAA.[26]

Thus, while *Casarotto* reaffirms the Supreme Court's prior holdings that a state may apply its law to an *arbitration provision* as long it applies that same law to contracts, generally, *Casarotto* does not address whether a state may apply its own law to the main contract. In other words, *Casarotto* does not speak to whether the separability doctrine applies. Rather, *Prima Paint* still governs this determination.[27] Accordingly, under the FAA, *first*, courts must look to the arbitration provision and determine whether it is valid and enforceable.[28] In the instant case, there are no allegations that strike at the validity of the arbitration provision, itself.

---

[23]*Id.* at 686-87 (quoting *Perry v. Thomas*, 482 U.S. 483, 492, 107 S.Ct. 2520, 2527 (1987)).

[24]9 U.S.C. § 2.

[25]*See Casarotto*, 517 U.S. 681

[26]*Id.*

[27]*See TRCM, L.L.C., v. Twilight Partnership*, 30,331 (La.App. 2 Cir. 1/21/98), 706 So.2d 1037, *writ denied*, 98-367 (La. 3/13/98), 713 So.2d 475.

[28]*Prima Paint Corp.,* 388 U.S. 395.

A valid contract requires the parties' consent.[29]  When a party shows that fraud vitiated his or her consent, that party may revoke or rescind that contract.[30]  Our state supreme court reasoned that courts should decide the validity of the parent contract, containing an arbitration provision, because "[i]t would be an absurdity to compel arbitration of the conditions in a contract which does not exist in its entirety in legal contemplation."[31]

The wisdom of applying the separability doctrine is a source of heated debate in, both, Louisiana courts and the U.S. Supreme Court.  Three dissenting Justices in *Prima Paint* well articulated points, weighing against the doctrine's application:

> The Court here holds that the United States Arbitration Act, 9 U.S.C. ss 1--14, as a matter of federal substantive law, compels a party to a contract containing a written arbitration provision to carry out his "arbitration agreement" even though a court might, after a fair trial, hold the entire contract--including the arbitration agreement--void because of fraud in the inducement. The Court holds, what is to me fantastic, that the legal issue of a contract's voidness because of fraud is to be decided by persons designated to arbitrate factual controversies arising out of a valid contract between the parties. . . .
>
> . . . .
>
> . . .Fraud, of course, is one of the most common grounds for revoking a contract. If the contract was procured by fraud, then, unless the defrauded party elects to affirm it, there is absolutely no contract, nothing to be arbitrated. Sections 2 and 3 of the Act assume the existence of a valid contract. They merely provide for enforcement where such a valid contract exists. These provisions were plainly designed to protect a person against whom arbitration is sought to be enforced from having to submit his legal issues as to validity of the contract to the arbitrator. . . .
>
> . . . .
>
> . . .[C]ourts have far more expertise in resolving legal issues which go to the validity of a contract than do arbitrators. . . . [W]here a party seeks to rescind a contract and his allegation of fraud in the inducement is true,

---

[29]La.Civ.Code art. 1927.

[30]La.Civ.Code art. 1948.

[31]*George Engine Co.*, 350 So.2d at 884.

an arbitrator's speedy remedy of this wrong should never result in resumption of performance under the contract. And if the contract were not procured by fraud, the court, under the summary trial procedures provided by the Act, may determine with little delay that arbitration must proceed.[32]

On the other hand, "to allow a judicial resolution with inherent delays and appeals of all disputes as to the validity of the contract in those instances where a contracting party alleges the substantive contract containing the arbitration clause is vitiated by a vice unrelated to the arbitration provision in the contract, obviously defeats federal and state policy favoring contractual extrajudicial and expeditious arbitration to avoid prolonging resolution of contractual disputes."[33] Even *Rayborn* recognized "the potential havoc this policy could play with arbitration clauses in Louisiana."[34] Specifically, the fourth circuit in *Rayborn* stated:

> Arbitrations are favored. It is difficult to reconcile the decision of this Court today and the judgment of the trial court with the question raised by the trial judge:
>
> [W]hat is to stop anyone from making the allegation of fraud or invalidity of the contract to avoid an [arbitration] provision in the contract[?][35]

Nonetheless, the Louisiana Supreme Court has found the dissenting Justices' views in *Prima Paint* persuasive.[36] Accordingly, Louisiana arbitration law mandates a rejection of the separability doctrine, necessitating that the court determine the validity of the main contract, before sending a case to arbitration.[37]

Furthermore, in response to the fourth circuit's concern, "[W]hat is to stop anyone from making the allegation of fraud or invalidity of the contract to avoid an

---

[32]*Prima Paint Corp.,* 388 U.S. at 407, 412-13, 415-16 (Black, J., dissenting).

[33]*TRCM, L.L.C.,* 706 So.2d at 1041.

[34]*Rayborn,* 703 So.2d at 819.

[35]*Id.* at 819.

[36]*See George Engine Co.,* 350 So.2d 881.

[37]*See Id.*

[arbitration] provision in the contract[?],"[38] we find that state law, regulating fraud pleadings, provides some limitation on a party's ability to use an allegation of fraud as a dilatory tactic. Therefore, we should carefully scrutinize claims of fraud, particularly, in circumstances like the instant case, in which Plaintiffs do not allege fraud in their original petition but, instead, add the allegation, only, after the other side files a motion to compel arbitration.

**LOUISIANA LAW ON PLEADING FRAUD**

Louisiana Code of Civil Procedure Article 856 provides, in part:

> In pleading fraud or mistake, the circumstances constituting fraud or mistake shall be alleged with particularity.

In *Laneaux v. Theriot*,[39] this court examined the above requirement, stating:

> In determining whether a cause of action has been pleaded, the court may disregard as mere conclusions of the pleader a petition's general charges of fraud if they are unaccompanied by formal allegations setting forth with particularity the circumstances alleged to constitute same.

In *Laneaux*, the plaintiff contended that she signed an act of sale which contained an additional transfer of certain property of which she was unaware when she signed it. She alleged that she relied on her close relatives' false representations and assurances of the act of sale's content. Furthermore, she said that she had a minimum education, was unfamiliar with complicated business and legal transactions, and, without counsel, did not fully comprehend the nature of the documents she signed. This court found that the "charges of fraud [we]re far too general and conclusory in nature to fulfill the particularity required by La.C.C.P. art. 856."[40] Thus, we agreed that the trial court properly excluded all evidence of fraud.

---

[38] *Rayborn*, 703 So.2d at 819.

[39] 488 So.2d 1327, 1329 (La.App. 3 Cir. 1986), (quoting *Rozas v. Evangeline Parish Police Jury*, 214 So.2d 398 (La.App. 3 Cir.), *writ denied*, 252 La. 1018, 315 So.2d 646 (1968)).

[40] *Laneaux*, 488 So.2d at 1329.

Likewise, in the instant case, the Plaintiffs' allegations of fraud are much too general and conclusory to merit consideration; therefore they are insufficient to warrant denying arbitration. Frequently, the Plaintiffs refer to Defendants' "fraudulent and deceitful acts and representations and misrepresentations." However, they attempt to particularize such allegations, only, in paragraph 34 of their petition and, then, inadequately. Specifically, they allege that Mr. Litton committed fraud:

(a) By entering into a verbal agreement with petitioners for the formation and operation of the Company, which was to be a business venture of the four members controlled by a majority of the membership interest, which agreement Litton did not honor and apparently never intended to honor;

(b) By employing an attorney who purportedly was representing the best interest of all members of the company, but who prepared an Operating Agreement that was extremely complex and which, unknown to petitioners, gave absolute and exclusive control of the Company to Litton;

(c) By agreeing with petitioners on October 25, 2002, to revise the Operating Agreement so that 51% of the membership interest would be in control of the Company and then presenting to petitioners an Operating Agreement that did not contain this provision;

(d) By never advising, or having Roberts to advise, the petitioners of the true nature and content of the Operating Agreement; and,

(e) By inducing, through his fraudulent acts and misrepresentations, petitioners to invest money in the Company, a company over which they [sic] no control whatsoever.

Even if section (a) were proved, it does not support a finding of fraud. Breach of an oral agreement is not fraudulent conduct.[41] Furthermore, this allegation does not reveal how Plaintiffs were fraudulently induced into signing the Operating Agreement. If they relied on their previous discussion, rather than reading the Operating Agreement before they signed it, they cannot now claim fraud in the inducement.[42]

---

[41]*First Nat'l Bank of Jefferson Parish v. Campo*, 537 So.2d 268 (La.App. 4 Cir. 1988), *writ denied*, 538 So.2d 578 (La.1989).

[42]*See Tweedel v. Brasseaux*, 433 So.2d 133 (La.1983). *See also Capdeville v. White's Temple of Church of God in Christ, Inc.*, 99-1040 (La.App. 3 Cir. 12/22/99), 755 So.2d 923.

Likewise, even if section (b) were proved, this does not support a claim of fraud. The Plaintiffs signed the Operating Agreement. Thus, they are presumed to know its contents.[43] They admit that they, only, briefly reviewed it before signing. However, even a cursory reading of the Agreement would have put them on notice that Mr. Litton was the Manager of the Corporation. Even if they had "flipped" only to the signature page, they would have seen that Mr. Litton was designated as the Manager. The Agreement is explicit in the vast powers it gives to the Manager of the Company. Again, the Plaintiffs cannot, now, be given relief for what they could and should have known before signing the agreement, because the information was easily discernible. Thus, they cannot reasonably claim, simply, that they relied on Mr. Litton or their attorney's representations, rather than on the Agreement.

In section (c), the Plaintiffs, also, claim they relied on Mr. Litton's representation. Elsewhere in the petition, they admit that they did not read the revisions to the Operating Agreement, themselves, before signing it.

Again, section (d) has no merit because Plaintiffs are presumed to know the content of what they signed.[44] If they did not understand the Agreement, they could have asked the attorney for some explanation. Without more, reliance on Mr. Litton's or the attorney's representations is insufficient to vitiate their consent in signing the contract.[45]

Section (e) is, merely, a conclusory statement that we may disregard.

Accordingly, the Plaintiffs have not alleged any *facts* sufficient to support that fraud vitiated their consent through error. Any error on their part was due to their not reading the Operating Agreement. While they may not have understood every nuance of the Agreement, the vast power given the Manager, whom they understood to be Mr. Litton, is set out, virtually, on every page of the Agreement. Thus, at the very least, they were provided with enough notice to cause them to question whether the Agreement substantially comported with the previous discussions they had with Mr. Litton.

As our supreme court stated in *Tweedel v. Brasseaux*:

---

[43]*Tweedel,* 433 So.2d 133.

[44]*Id.*

[45]*See Id.*

The law of Louisiana is that one who signs an instrument without reading it has no complaint. As this court wrote long ago:

". . . She now asserts that she is not bound by this instrument, because she did not read it, and signed it in ignorance of its purport. We have only to say that the law does not compel people to read or to inform themselves of the contents of instruments which they may choose to sign, but that, save in certain exceptional cases, it holds them to the consequences, in the same manner and to the same extent as though they had exercised those rights, . . ."[46]

"[S]ignatures to obligations are not mere ornaments." Additionally, the courts of our state have long held that "[i]f a party can read, it behooves him to examine an instrument before signing it; and if he cannot read, it behooves him to have the instrument read to him and listen attentively whilst this is being done."[47]

(Citations omitted.) Moreover, the *Tweedel* plaintiffs relied on information that their own attorney had related to them. Thus, "*Tweedel* offers no help to those who blindly affix their signature to documents."[48]

Additionally, the instant case is not one of an adhesionary contract for which the Plaintiffs had no bargaining power. Mr. Litton and WLD were relying on the Plaintiffs, not only to make significant contributions in consideration of their memberships but, also, to advance Mr. Litton's initial contribution.

Thus, we see no reason to remand this matter to the trial court for consideration of the "fraud" claims. Considering the petition's failure to meet the requirements of La.Code Civ.P. art. 856, the trial court need not accept any evidence concerning the allegations of fraud, as we have properly dispensed with them.

Accordingly, the allegations of fraud present no impediment to arbitration under federal or state law in the particular circumstances of this case. At this point, state and federal law, again, converge. Thus, the remainder of our analysis applies under either law.

---

[46]*Id*. at 138 (quoting *Ray v. McLain*, 106 La. 780, 190, 31 So. 315, 319 (1901)).

[47]*Id*. at 137 (quoting *Snell v. Union Sawmill Co.*, 159 La. 604, 608, 105 So. 728, 730 (1925)).

[48]*Capdeville*, 755 So.2d at 925.

**CONTRACTUAL ARBITRABILITY – SCOPE OF ARBITRATION CLAUSE**

The arbitration clause in the Operating Agreement encompasses "[a]ny controversy or claim arising out of or relating to this Agreement." Thus, we must determine whether the arbitration agreement, by its terms, encompasses the claims. As we noted above, we are to apply the opposite presumption from that used to determine *who* had jurisdiction over the validity of the agreement. Namely, in determining *whether* the clause encompasses a specific claim, we must resolve any doubt or ambiguity in favor of arbitration.[49]

Plaintiffs claim that the Defendants owe them the amounts of their capital contributions, the amount they loaned to Mr. Litton for his capital contribution, lost profits from the business operations of the company, and attorney fees. We find that these claims relate to the Operating Agreement, as it governs the members' capital contributions and the return of those contributions, as well as profits and losses. Further, even though, a portion of a claim is for a personal loan to Mr. Litton, so that he could make his initial contribution to the Company, it is sufficiently related to the other claims for the arbitrator to decide it. There is a strong public policy favoring arbitration.[50] The weight of this presumption is heavy, and the trial court should not deny arbitration unless it can be said with positive assurance that an arbitration clause is not susceptible of being interpreted to cover the dispute at issue.[51]

Additionally, the Plaintiffs allege that Mr. Litton breached his fiduciary duty as Manager and aver that he should be removed from his position as Manager. This claim sufficiently arises out of the Operating Agreement because the Manager's duties are explicitly set forth in the agreement as are the procedures for the Manager's removal.

Plaintiffs, also, object to the Defendants' determination that they forfeited their membership. However, the Operating Agreement governs forfeiture. Further, Plaintiffs request a judicial dissolution of the Company, which, again, the Operating Agreement covers.

---

[49]*Kaplan*, 514 U.S. 938.

[50]*TRCM, L.L.C.,* 706 So.2d 1037; *Kaplan*, 514 U.S. 938.

[51]*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 103 S.Ct. 927 (1983).

16

Plaintiffs request that Mr. Litton be enjoined from acting as Manager, since his decisions may be detrimental to them. This, also, is a decision for the arbitrator because the Operating Agreement sets out the Manager's duties, as well as procedures for his removal.

Lastly, Plaintiffs request that Mark L. Roberts and his law firm be prohibited from representing any of the Defendants, because his drafting of the Operating Agreement for the L.L.C. creates a conflict of interest. We need not address the claim at this juncture. As we have found all of the Plaintiffs' claims to be arbitrable, we stay the court proceedings, pending arbitration.

## SUBJECT MATTER ARBITRABILITY

"Under subject-matter inarbitrability, the recourse to arbitration can be defeated on the basis that the subject matter of the dispute prevents it from being submitted to nonjudicial processes as a matter of law."[52] Thus, public policy is another of the few grounds which may allow trial courts to retain jurisdiction of the merits.

The Plaintiffs contend that "the Operating Agreement is null and void ab initio because it is against public policy." However, this allegation is absent from their original petition. They added it after the Defendants' moved to stay the proceedings, pending arbitration.

Specifically, they assert that the Agreement "attempts to supercede and contravene the statutory laws of the State of Louisiana that pertain to limited liability companies, specifically by eliminating all of the rights granted and afforded to members of the Company, and restricting, if not eliminating, the rights of the members to manage preserve, control, use and/or regulate their own property."

However, statutory law, governing L.L.C.'s, in fact, permits any member or group of members' duties, management rights, or voting rights to be restricted by provisions in its operating agreement.[53] The rights provided to members under the statutory scheme are merely default provisions when the Articles of Organization and/or Operating Agreement is silent on the issue. Thus, even assuming that Plaintiffs' characterization of the Operating Agreement is correct, it is not violative

---

[52]CARBONNEAU, *supra*, n.7 at 16.

[53]La.R.S. 12:1311; La.R.S. 12:1313; La.R.S. 12:1318.

of public policy. Accordingly, this particular allegation fails to implicate any public policy.

**FRIVOLOUS APPEAL**

The Plaintiffs request attorney fees for frivolous appeal. Given our disposition on the merits, we decline this request.

## CONCLUSION

The trial court erred in finding that the Plaintiffs' claims were sufficient to avoid arbitration. Thus, we remand the case and order the trial court to issue a stay of these proceedings, pending arbitration. We assign costs of this appeal to Plaintiffs/Appellees, Joseph Williams and Stacey Williams.

**REVERSED AND REMANDED WITH INSTRUCTIONS**.